## Case No. 1,938.

### The BROOKLYN.

[2 Ben. 547;[1] 2 Am. Law T. Rep. U. S. Cts. 12.]

District Court, S. D. New York. Nov. Term, 1868.

TOWBOAT AND TOW—JURISDICTION—TORT—NEGLIGENCE.

1. Where a canal-boat was taken in tow, with other boats, by a steamboat, at Albany, to be towed to the foot of North Moore street, in the city of New York, and, on their arrival there, the steamboat ran in near the dock to drop off the canal-boat, and signalled her to drop off, which she failed to do, and the steamboat kept on with her, there being many vessels at anchor in the harbor, leaving only a narrow channel near the piers, down which the tow passed, till near the Battery, when, owing to the sudden anchoring of two vessels ahead, the steamboat was compelled to stop, and the canal-boat was carried, by a strong northeast wind and an ebb tide, against pier 2, North river, and sunk, and the owner of the cargo filed a libel against the steamboat to recover the damages: *Held*, that the court of admiralty had jurisdiction of the case as one of a tort committed on navigable waters, even though both vessels were navigating between ports of the same state.

[Cited in The Leonard, Case No. 8,256; The Elmira Shepherd, Id. 4,418; The M. Vandercook, 24 Fed. 476.]

[See The Commerce, 1 Black (66 U. S.) 574; The Syracuse, Case No. 13,717; The Jupiter, Case No. 7,585.]

2. The duty of the steamboat not to injure the canal-boat did not arise out of the towage contract, but was imposed by the law, and she was liable in the admiralty for negligent navigation, amounting to a breach of such duty. That duty was the same after the boats had passed North Moore street as before.

[Cited in The Deer, Case No. 3,737; Jennings v. Muller, Id. 7,282; The M. J. Cummings, 18 Fed. 183; The Jonty Jenks, 54 Fed. 1023.]

3. The steamboat was guilty of negligence in navigating through the anchored vessels in such a narrow channel, instead of going out into the more open part of the harbor. The sudden anchoring of the vessels ahead of her was a circumstance which she should have an-

---

[3] [From 8 Law Rep. 70.]

[4] [From 8 Law Rep. 70.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

ticipated. The cases of Allen v. Newberry, 21 How. [62 U. S.] 244, Maguire v. Card, Id. 248, and Poag v. The McDonald [Cases Nos. 11,238 and 11,239] commented upon.

[Cited in The Merrimac, Case No. 9,478; The Delaware, 12 Fed. 573; The Narragansett, 20 Fed. 398.]

At law. This was a libel filed to recover damages for the loss of about four thousand bushels of oats, and about fifteen hundred bushels of rye, shipped by the libellants, Isaac G. Parker and others, as owners thereof, on the 5th of May, 1863, at Fort Miller Bridge, Saratoga county, New York, on board of the canal-boat Ann Maria Nichols, to be transported, by the way of the Champlain canal and the Hudson river, to the city of New York. The canal-boat arrived at West Troy, and entered the river, and was there taken in tow by the steamboat Brooklyn, to be towed to New York. The libel alleged that on the 14th of May, between the hours of twelve and two o'clock in the afternoon, the Brooklyn, having the canal-boat, with her cargo, in tow, carelessly ran the canal-boat against pier No. 2, in the North river, causing the canal-boat to fill, and to sink to the bottom with her cargo; that the loss to the libellants, which was stated at five thousand dollars, was caused by the carelessness and negligence of those navigating the Brooklyn, in carelessly towing the canal-boat against, and causing her to come into collision with, the said pier, when there was room enough to have passed without striking; and that the canal-boat could have done nothing to prevent the collision, as she was fast to, and under the control of, the Brooklyn. The libel did not aver any contract of towage by the Brooklyn, or any breach of any such contract by her, but merely, that the canal-boat, after her arrival at Troy, was taken in tow by the Brooklyn, for the purpose of being towed from Troy to New York, and that the loss happened by the alleged carelessness and negligence above referred to.

The defence set up in the answer was, in substance, that the Brooklyn engaged to tow the canal-boat only to off the foot of North Moore street, New York, which was above the place of collision; that when the Brooklyn reached New York, the wind was northeast, and the tide strong ebb; that a large fleet of wind-bound vessels was lying at anchor in the North river, extending well over to the Jersey shore, leaving a channel open along the docks for the passage of boats and tows; that near North Moore street, the Brooklyn, with her tow, ran in as close as it was prudent to go, and blew her whistle for the canal-boat to drop off; that the canal-boat did not drop off; that, there being no opening through which the Brooklyn could safely take her tow out into the river, she kept on down the channel before spoken of; that when she was off pier No. 4, North river, two vessels came suddenly to anchor in the channel, ahead of her, and substantially closed it up, compelling her to stop her headway; and that the ebb tide then sagged the boats in tow toward the pier, and the canal-boat struck it. [Decree for libellants.]

Townsend Scudder and John W. C. Leveridge, for libellants.

Welcome R. Beebe and Charles M. Da Costa, for claimant.

BLATCHFORD, District Judge. 1. An exception is taken to the jurisdiction of the court by the answer, and is urged on the ground that, the towing being done under a contract to tow the canal-boat from one place within the state of New York, to another place in the same state, this court has no jurisdiction to award the damages claimed in this suit. It is contended that, in view of the decision of the supreme court, in Allen v. Newberry, 21 How. [62 U. S.] 244, to the effect that a district court has no jurisdiction over a contract of affreightment of goods between two ports in the same state, and of the decision of the same court, in Maguire v. Card, Id. 248, to the effect that a district court has no jurisdiction over a contract for supplies furnished to a vessel engaged in the business of navigation and trade between ports exclusively within the same state, this court has no jurisdiction to award damages in this suit for the loss sustained by the libellants. It is true that this court did, in the case of Poag v. The McDonald [Case No. 11,238], dismiss the libel for want of jurisdiction, on a state of facts precisely like that in the present case, the decision being founded on the supposed effect of the decisions in Allen v. Newberry and Maguire v. Card. It is also true that Mr. Justice Nelson, in the circuit court, on an appeal taken in Poag v. The McDonald [Id. 11,239], sustained the dismissal of the libel for want of jurisdiction, on the view that, even though the suit were to be regarded as founded in tort, for negligence and carelessness, the district court had no jurisdiction of it, because both of the vessels were, at the time of the commission of the tort, engaged solely in the internal commerce of the states. But this view has since that time been departed from, in practice, both by this court and by the circuit court. In Langley v. The Syracuse [Case No. 8,068], which was a suit brought in this court, by the owner of a canal-boat towed from Albany to New York, against the steamboat which towed her, to recover for the damages occasioned through the wrongful and tortious act of the steamboat, by the sinking of the canal-boat while in tow of her, the same judge (Judge Betts) made a decree in favor of the libellant, who had dismissed the libel in Poag v. The McDonald, and that decree was affirmed by Mr. Justice Nelson, in the circuit court, as recently as in November, 1867. 6 Blatchf. 2 [The Syracuse, Case No. 13,717]. Such I

understand to be the settled law and practice of this court, and of the circuit court, in cases of like character; and I know that Mr. Justice Nelson does not adhere to the views expressed by him in his opinion delivered in the case of Poag v. The McDonald, so far as they apply to the question of jurisdiction involved in that case.

The question now raised was, in my judgment, disposed of by the decision of the supreme court at the December term, 1861, in the case of The Commerce, 1 Black [66 U. S.] 574. That decision affirms that the admiralty has jurisdiction of torts committed on the navigable waters of the Atlantic coast which empty into the sea, including among them the navigable waters of the Hudson river; and that, in a case of tort, nothing more is necessary to sustain the jurisdiction of the admiralty than to show that the tort was committed on such navigable waters. The only point of discussion, therefore, is whether the present case is one of tort. Now, the fact that the steamboat was at the time of the loss engaged in towing the canal-boat, under a contract of towage, either express or implied, does not make the negligent and careless navigation of the steamboat in performing such towage any the less a tort toward the canal-boat or her cargo, if injured thereby, than it would have been toward a third and stranger vessel which should have been injured thereby. Nor does the fact that such negligent navigation may be a breach of the contract of towage, make it any the less a tort toward the canal-boat or her cargo, if injured thereby. This view is sustainable entirely aside from any of the doctrines upon which the cases in regard to pure contracts are placed. In cases of contracts of affreightment and contracts for supplies, the obligation of the delinquent rests wholly upon the contract, and arises wholly out of it. In the present case, the obligation of the steamboat not to commit a tort against the canal boat did not arise out of the contract of towage, any more than the obligation of a third vessel meeting the canal-boat on her trip, not to collide with her, arose out of such contract or out of any contract. The obligation of the steamboat not to commit such tort arose out of the principle, applicable in all cases of tort—"sic utere tuo ut non alienum laedas." Her duty did not result from the consideration paid or to be paid for the towage. It was imposed by the law, and would have existed even though her service had been gratuitous. If the libellants' property was lawfully where it was, the steamboat owed a duty toward it independent of any contract of towage, and is liable for a collision and the consequent damage to such property caused by negligent navigation amounting to a breach of such duty. The duty was of the same character as that imposed by the law upon a third and stranger vessel. Philadelphia & R. R. Co. v. Derby, 14 How.

[55 U. S.] 468, 485, 486. The present action, therefore, both on the libel and in fact, is one of tort, founded on negligence, and this court has jurisdiction of it.

2. It is urged on the part of the claimant, that the contract of towage ended at North Moore street, and that, as the canal-boat did not drop off there, but continued to adhere to the steamboat, the steamboat is only liable for willful default and negligence, which has not been shown. This view cannot be maintained. If the steamboat chose to go on with the canal-boat attached, after leaving North Moore street, and after the canal-boat had refused, notwithstanding signals from the steamboat, to drop off, both vessels must be regarded as assenting to the further towing of the canal-boat by the steamboat, and the canal-boat being lawfully where she was, the steamboat was under as much obligation afterward as before not to be guilty of negligent and careless navigation as respected the canal-boat.

3. This canal-boat was one of ten boats in tow, one being on each side of the steamboat, and four in each of two tiers behind, drawn by hawsers. This canal-boat was the extreme outside boat to the left, coming down the river, in the rear tier. I cannot resist the conclusion, on the evidence, that, in view of the crowded condition of the river along the piers, it being full of vessels at anchor, leaving only a comparatively narrow channel, as far down as the Battery, between the line of anchored vessels and the piers, and of the fact that there was no opening in such line of vessels through which the steamboat could safely pass with her tow to the open river beyond (a fact averred in the answer), and of the state of the tide, it being strong ebb and setting in upon the piers in the vicinity of the place of collision, and of the fact that the steamboat, from a sufficient distance above to have allowed her, before reaching the thickest part of the line of vessels, to pass out safely with her tow into the wide and open river beyond, could have seen, with proper vigilance, the condition of things in the confined channel into which she was entering, and of the fact that there was no necessity for her entering such channel, she was guilty of negligence in putting herself and this canal-boat in a position where a collision of the kind which happened was sure to occur, if any obstruction suddenly presented itself. The sudden coming around the Battery, from the East river, and anchoring of the two vessels, was a circumstance that ought to have been anticipated by the steamboat as likely to occur, with the wind and tide as they were. Her negligence consisted in getting herself and her tow into such a cramped position, so near to the piers, in such a tide.

4. There was no negligence on the part of the canal-boat, contributing to the accident. Her movements were wholly under the control of the steamboat.

There must be a decree for the libellants, with a reference to ascertain the damages sustained by them.