### THE NARRAGANSETT.

*(Circuit Court, D. Rhode Island.   May 21, 1884.)*

LIBEL—NEGLIGENCE—PREPONDERANCE OF TESTIMONY.
     When a libelant makes out a case of negligence by a clear preponderance of testimony, a decree will be entered in his favor.

In Admiralty.

*Miner & Roelker*, for libelants.

*Thurston, Ripley & Co.*, for claimant.

COLT, J. On October 15, 1882, the steam-tug Narragansett, having the barges Manhattan and Union in tow, when near and to the westward of Point Judith, deeming it imprudent to round the point owing to the force of the wind, determined to turn back and seek the nearest harbor. The turn was made inshore. The tug turned about, and was heading to the westward, but the barge Manhattan, when

nearly around, struck something. She was towed until within two miles of Watch Hill, and then sank in shallow water. On board was a cargo of coal, valued at $6,500, which was almost a total loss. The coal was shipped by W. H. Jourdan, and insured against loss in the Providence Washington Insurance Company. The company, having paid the loss, now brings this libel against the tug Narragansett, alleging negligence and unskillful conduct on the part of those navigating her.

About two miles to the westward of Point Judith lies a reef of rocks nearly three-quarters of a mile long, well known to mariners, and marked upon the charts, called Squid's ledge, and the libelant charges that the barge was negligently towed upon this ledge. This is denied by the claimant, the Eastern Transportation Company. On the part of the libelant the evidence has been mainly directed towards proving that the barge ran upon Squid's ledge. The claimant, on the other hand, seeks to show that the position of the tug and barges at the time of the accident was west and south of the ledge, and that the Manhattan must have struck some unknown obstruction, probably the sunken wreck of a mud-digger.

The libelant undertakes to establish, by numerous eye-witnesses at different points on the shore, that from the location of the barge at the time she must have been on Squid's ledge. Some nine witnesses are called who saw the occurrence from Point Judith, whose testimony clearly locates the barge in the range of the ledge looking west. A large number of witnesses on the Rhode Island shore, to the northward, place the barge in the range of the ledge looking south. By the first class of witnesses it is said an east and west range is shown, by the second a north and south, and thus by a cross-range it is claimed the location is fixed with great certainty. In our opinion, the libelant has submitted an amount of evidence to establish this point which is neither met nor overcome by any proof offered by the claimant. The testimony of these observers, more than 20 in number, who saw the accident from different positions, though disagreeing in some respects, and perhaps the more honest for that, leave but little doubt that the barge struck the ledge. We do not deem it necessary to take up this testimony in detail. The witnesses on Point Judith locate Squid's ledge by ranges from objects on the point, and the fact is shown that at the time of turning back the tug and tow were in range of it. Most of the witnesses on the point think the tug came down over the southerly end of the ledge and went back about the center; one witness is positive she came down outside, but went back in range of it. Whatever may be these differences in the opinion of individual witnesses, the substance of their testimony, taken as a whole, proves that the barge at the time of the accident was in the direct range of the ledge. And so of the witnesses to the northward, on the Rhode Island shore. Their testimony does not agree in particulars. They locate the ledge by different means. Some had no

particular ranges to go by; others had ranges. Some locate the ledge by the water breaking; other witnesses, especially those at Point Judith, do not think the water broke on the ledge that morning. Be this as it may, taking the two classes of testimony as a whole, we cannot but come to the conclusion that the libelant has fairly made out by cross-ranges that the barge was on the ledge when the accident occurred.

We do not think this mass of testimony is overthrown by the claimant's witnesses. Horace Tucker, an eye-witness, says the vessels were in the vicinity of Squid's ledge, but outshore of it. Walter J. Watson, who lives at Point Judith, testified that in his judgment they had not got up as far as the ledge, but he does not say they were not in range of it looking west. George C. Whaley, called by the libelant, first thought they were east of the ledge, but afterwards finds he was mistaken, and thinks they were west of it. Wanton R. Carpenter testifies that the tug and barges were on a range of the telegraph pole and bath-house from a point on the piazza of his hotel at Rocky Point, and that this range would bring them south-west of Squid's ledge. Subsequently, George T. Lamphear, surveyor, on behalf of the libelant, took the bearings from the same point on the hotel piazza of the range over the telegraph pole and bath-house, the result being as indicated by him on the chart, that the Carpenter range in fact crosses the ledge. After this, Mr. Carpenter and Capt. Leete, of the Manhattan, again took an observation one morning in January last, after a severe storm, when the water was breaking on the ledge. They found the water did not break in the range testified to by Mr. Carpenter, and therefore it is claimed the ledge is not located in that range, so that the tug and barges must have been outside the ledge, as first stated by him. This is the extent of the claimant's evidence from eye-witnesses on the shore. The most important witness for the defense is Mr. Carpenter. It must be admitted, however, that doubt is thrown upon the accuracy of his judgment as to the location of the ledge by the surveyor, Lamphear. Taking the claimant's evidence of this class as a whole, it can hardly be said to seriously affect the full and positive testimony of the libelant.

The statements of those on board the tug and barges are conflicting. Owing to the interest of the parties, and for other reasons, we ought not to attach to it the same weight as to the class of testimony we have just considered. The captain and mate of the tug and the captains of the barges testify, in substance, that they are familiar with Squid's ledge, and that when the accident happened they were to the south and west of it, and about two to two and one-half miles from Point Judith. It is a significant fact, however, that Capt. Beckwith, of the Narragansett, stated just after the accident that he thought the barge struck Squid's ledge. The libelant calls the mate of the barge Union, whose testimony is unimportant; also Van Wart, a deck hand on the Narragansett, and Bennett, a deck hand on the Manhat-

tan, whose evidence tends to prove the location of the vessels at the time on the ledge. It is manifest the barge struck something. If she was south and west of the ledge, what did she strike? Testimony is introduced to prove that a mud-digger was wrecked in that locality some months before, and the inference is, no other obstruction being shown, that the barge came in contact with it. The location of the mud-digger varies. Edward Luckenbach, who had it in tow, says it broke apart and sank about a mile and a half westward of Point Judith, off Squid's ledge somewhere. George W. Wootton, who struck it in October or November, 1882, and made a memorandum at the time, places it also about a mile and a half west of Point Judith. Capt. Hoch saw the wreck in September, and thinks it was two miles, probably two and one-half, from the point, and Tucker thinks it about the same distance. It is clear that Luckenbach, who had the mud-digger in tow when it sank, and Wootton, who made a memorandum of the bearings, are probably more nearly correct as to the position of the sunken wreck than the two other witnesses, and they locate it not more than a mile and a half from Point Judith; but if the officers of the tug and barges are correct, they were from two to two and one-half miles from Point Judith when they turned back.

Again, this wreck, neither before nor since, seems to have done any damage to vessels, although it would appear from the evidence it was directly in their path when rounding Point Judith. No attempt has been made to show, by an examination of the barge after she sank in shallow water, that she came in contact with a projecting timber or the frame of the mud-digger. Nor does it appear that any effort has been put forth by the claimant since the accident to locate, with certainty, the wreck of the mud-digger, further than the testimony noticed. Under these circumstances, and as opposed to the libelant's testimony, we cannot think the mud-digger theory sustained by the evidence, or the probabilities of the case. It is reasonable to conclude from the evidence that the tug and tow, keeping well to the northward on account of the wind, on turning inshore, when approaching within a short distance of Point Judith, naturally struck Squid's ledge, which stretches north and south for nearly three-fourths of a mile. But it is said that the barge striking the ledge would have sunk almost immediately, and could not afterwards have been towed for miles. The chart shows 13 feet of water at the northerly and southerly ends of Squid's ledge, and 16, 17, and 18 feet at low water along the center. As it was high tide in the morning at the time of the accident, we may add about three feet to the depth as delineated on the chart. The Narragansett drew 12 feet of water, the Union, 16 feet 3 inches, while the Manhattan drew over 18 feet. It is easy to see that the Narragansett and Union might pass safely where the Manhattan could not. With the sea running as it was, the Manhattan might scrape upon the reef, or settle upon it until the sea lifted her off, while the tug and other barge would escape. From an acci-

dent of this kind she might not sink immediately, but would float a greater or less time, according to the extent of her injury.

Again, it is urged with great earnestness by the claimant that the theory of the libelant involves an impossibility, because it proves that the tug and tow crossed the ledge twice,—once in approaching Point Judith, and again in turning back; that this is impossible from the fact that the first passage was over the south end of the ledge, where the water is more shallow, and where the Manhattan would have struck. It is, however, by no means to be concluded from the evidence that the tug and barges passed over the ledge twice. It is true that most of the witnesses on Point Judith say that the tug came down on a range with the southerly end of the ledge, but they could not, from their position, tell how far to the east the tug came before turning. Again, the tug was in advance of the tow, and it may be she crossed twice. The probability is that the turn was made just after the ledge was reached by the tug, or, possibly, the tug and tow came down just south of the ledge and then turned back upon it. However this may be, there is nothing which makes the theory of the libelant, that the Manhattan, in some way, in turning, struck the ledge, either impossible or improbable upon the evidence. By the great weight of testimony the tug and tow were located at the time of the accident where Squid's ledge lies.

In our opinion, the libelant has made out a case of negligence by a clear preponderance of testimony, which makes the question of the burden of proof raised on the argument immaterial. Under these circumstances a decree should be entered in favor of the libelant. *The Mohler*, 21 Wall. 230; *The Lady Pike*, Id. 1; *The Brooklyn*, 2 Ben. 547; *The Deer*, 4 Ben. 352.