THE CIAMPA EMILIA.

THE F. W. VOSBURGH.

SOMERS *v.* THE CIAMPA EMILIA *et al.*

CIAMPA *v.* THE F. W. VOSBURGH.

*(District Court, D. New Jersey. July 13, 1891.)*

COLLISION—VESSEL AT ANCHOR—TUG.
    A dredge was anchored in the middle of the channel of the Delaware river, with proper lights burning. A ship towed by a tug came up the river. The tug, at a distance of a mile and a half of the dredge, shaped its course so as to pass to westward of the dredge, and steadily maintained that course. The ship in charge of its own master and crew was so carelessly steered that it did not follow the course of the tug, but collided with the dredge. *Held,* that the ship, and not the tug, was responsible for the collision.

In Admiralty.
*Henry R. Edmunds,* for libelant.
*Wing, Shoudy & Putnam,* for the Ciampa Emilia.
*Hyland & Zabriskie,* for the Vosburgh.

GREEN, J.    This suit is brought to recover damages sustained by the dredge Arizona, owned by the libelant, in a collision with the ship Ciampa Emilia.    On November 2, 1888, the dredge Arizona was engaged in dredging out the channel of the Delaware river, at Mifflin bar, a few miles below Philadelphia.    About 10 o'clock on the evening of that day she was run into by the ship Ciampa Emilia, and sustained considerable damage.    The ship was being towed by the Vosburgh on a hawser from 40 to 45 fathoms in length.    The night was clear starlight, the wind fresh from the south-east, and the tide strong flood.    The dredge was anchored about in the middle of the channel, with the proper lights set, and was so placed that on either side there were at least 250 feet of water, averaging in depth 20 feet, in which deeply laden-vessels could be safely navigated.

The only question involved in this case is one of fact.    The legal principles applicable are perfectly well settled.    It was plainly the duty of the Vosburgh to tow the ship in such careful manner that she would clear any obstruction in the course taken, if carefully and promptly man-

aged at the helm, and vigilantly guarded by her lookout. In an equal degree was it the duty of the ship to exercise all reasonable care, prudence, and skill to avoid doing any damage to herself or to any other vessel. The fact that the motive power which communicated impetus to the ship was furnished by the tug, to which she was connected by the hawser of more or less length, does not relieve her from her duty in this respect. She was still, to a very considerable degree, controlled by her own rudder. Her master, her lookout, her helmsman, were all fully in charge. They were under the obligation of vigilance and thorough performance of their varied and respective duties, and failure to perform such duties would, inevitably, deprive the ship of her right to complain, if she received or caused injury while being towed. *The Brandow*, 39 Fed. Rep. 831; *The Herald*, 8 Ben. 263.

The libel in this cause was filed November 5, 1888, by the owner of the dredge against the ship Ciampa Emilia only. After reciting the facts of the collision, it charged the cause as follows: "The said collision was wholly caused by the negligent and careless management of those in charge of the ship, which had or might have had abundant and timely warning of the presence of the dredge, and could and should have seen her lights, and avoided her, there being plenty of room for that purpose;" and more especially particularizing the negligence so charged. The libel then sets out that such negligence was clearly evidenced by (1) not having a sufficient lookout; (2) by having an incompetent man at the wheel, inattentive to his duty; (3) in not exercising prudence and skill in the management of the ship; (4) in general incompetence and want of watchfulness and care in the management of the ship. It will be noticed that this libel was filed within three days after the collision, and when all the facts and circumstances were fresh and vivid in the recollection of those who were present, and saw the occurrence. At that time no one connected with the injured dredge cast aught of blame upon the tug Vosburgh. Afterwards, upon the petition of the claimants of the ship, the Vosburgh was brought into court, under the provisions of the fifty-ninth rule in admiralty, to the end that she might be proceeded against for the damage alleged to have been sustained by the dredge. The charge made against the Vosburgh by the claimants of the ship is that, in approaching the dredge, she directed her course so as to pass to the eastward of the Arizona, and, had she kept on such course, she would have towed the ship by the dredge in safety. Instead of so doing the Vosburgh, when very near the Arizona, took a rank sheer to port, and undertook to pass to the westward of the dredge. The ship, however, was so near the dredge, at that time, that she fetched up on one of the lines by which the dredge was anchored. This stopped her swing to port, and made her swing to starboard. The tug kept on her way, and so dragged the ship into violent collision with the dredge. To this charge the Vosburgh answers, in effect, that when, at a distance of two miles below the dredge, she shaped her course to pass to the westward of the dredge, whose lights were plainly in view; that such course was not deviated from thereafter: that when the Vosburgh was about opposite the dredge, and from

180 to 200 feet to the westward the ship took a sudden sheer to the eastward, breaking the towing hawser, and almost immediately striking the dredge at the lower easterly corner, thereby inflicting the damage complained of.

The testimony in the cause is quite conflicting, but, upon careful consideration, in my opinion the decided weight of evidence fairly establishes these facts: First, as to the ship: The Ciampa Emilia was in charge of a master who was wholly ignorant of the navigation of the Delaware; who did not understand the usual and customary signals which are prescribed for steam-vessels when approaching each other; nor did he know what such signals meant. The lookout on duty was so incompetent or inattentive that he failed utterly to see the lights of the dredge, or the dredge itself, nor did he report its presence or call the attention of the master or the helmsman to it, in any way. The helmsman steered the ship so carelessly and negligently that, just previously to the collision, the agent of the ship, who had come down the river to meet her, and had boarded her, noticed the deviation, and, although possessing no authority in the premises, peremptorily ordered the helmsman to change his course, and follow the course of the tug. That in obeying this order, and in attempting to change the course of the ship, the helmsman directed her in such a way that she struck on her port bow the chain by which the dredge was anchored, breaking the towing hawser, and being cast by the force of the blow upon the chain, over to the starboard, striking the easterly lower corner of the dredge. That the ship was not following the course of the tug is clearly established by the fact that the tug drew two feet more water than the ship, and could not have passed over the anchor chain of the dredge, where the ship attempted to pass, without coming in contact with it. Then, as to the tug, it seems proven, satisfactorily, that prior to the collision, and for the distance of at least two miles, she had been running on the Tinicum island range of lights. That it is customary for vessels running up the Delaware river to change from the Tinicum range of lights to the Ft. Mifflin range at a point about one and a half miles below the place where the dredge was anchored. Such change is about two points and half to port. That such change was duly and properly made by the tug, and her course was then shaped to pass to the westward of the dredge, whose lights were plainly visible. Such course was not afterwards changed or varied in any material degree. That, as a result of keeping on such course, the tug, just previous to the collision, was opposite the dredge, and about 150 feet west of her. Had the ship been properly navigated, had she followed closely and truly the course of the tug, this collision could not have occurred.

Upon these facts, which seem to be sustained by the weight of the evidence, no negligence can be imputed to the tug; and the libel, as far as the Vosburgh is concerned, must be dismissed, with costs against the ship. So far as the ship is concerned, there must be a decree for the libelant with costs. Let the usual order of reference be made to ascertain the amount of damages. In coming to this conclusion, I have not

been unmindful that in the case of *Ciampa* v. *The F. W. Vosburgh*, 41 Fed. Rep. 57, the learned judge for the eastern district of New York has, upon consideration of a portion of the testimony presented to this court, based upon the same collision, adjudged the Vosburgh guilty of negligence in suddenly changing her course from the eastward to the westward when too near the dredge safely to make such change. The opinion and judgment of so able a judge should receive the most careful consideration, and are justly entitled to the greatest weight. Had the evidence presented in this court been substantially the same as that considered in the court in New York,—although its weight might not have been as impressive to me as it seemed to the learned judge there,—I should unhesitatingly have adopted his conclusions. But in addition to the testimony there submitted, is now for the first time presented the testimony of two witnesses, whose statements under oath I cannot reject. This new testimony, if received as true, clearly proves, as it seems to me, the very important fact that the Vosburgh made no variation or change in her course after she shaped it in taking the Mifflin range lights to go to the westward of the dredge. If this is so, the theory of the claimants that it was the sudden change of course by the tug when near the dredge, that caused the ship to strike the dredge, falls to pieces. There is nothing to sustain it. This testimony was not before the court in New York. Had it been, the result might have been different. At any rate, the introduction of such new testimony makes the present case a different one from the one referred to, and it is therefore entitled to a thorough and independent consideration.