### THE HERCULES.

#### HUBBELL et al. v. THE HERCULES.

(Circuit Court, E. D. Michigan. April 8, 1893.)

1. TOWAGE—NEGLIGENCE OF TOW—DREDGE.

A tug with two scows and a dredge in tow left Au Sable, Mich., at 9 P. M., to cross Saginaw bay, there about 30 miles wide. At the time there was little or no breeze. At 11.30, when about halfway over, the captain of the dredge hailed the tug, and asked if it would not be better to turn back, but the tug's captain thought it as well to go on. At this time there was a little sea on, but not of such a character as to indicate danger to the dredge. Between 1 and 2 o'clock the heavy crane and dipper of the dredge broke their chain fastenings, and rolled from side to side. The tug hauled up into the wind, and in about an hour the crane was secured. At 3 o'clock the dredge suddenly sank. She was not well shaped to withstand any sea at all, and the weight of evidence tended to show that her sinking resulted from the straining of her bottom caused by the swinging of the crane. The chains holding the crane were three sixteenths of an inch in size. Neither sea nor wind was heavy at any time during the night. *Held*, that the sinking of the dredge was due to her unseaworthy condition, and the insecure fastening of the crane, and that the tug was not at fault in not turning back at the first hail.

2. SAME—BURDEN OF PROOF.

The burden was on the owners of the dredge to show that the sinking was due to the negligence of the tug.

In Admiralty. Libel by Thomas M. Hubbell and George W. Skeldon against the tug Hercules, her engines, etc., for negligence causing the loss of libelant's dredge while in tow of the Hercules. The

cause was certified to this court because of the disqualification of the district judge. Libel dismissed.

F. H. Canfield, for libelants.
J. W. Finney, for respondent.

TAFT, Circuit Judge. The libel in this case was filed to recover the value of a dredge which the master of the tug Hercules undertook to tow, with a couple of dredge scows, from Au Sable to Port Huron. The dredge was sunk in crossing Saginaw bay, and the libel charges that the sinking was on account of the negligence of those in charge of the tug. The answer of the respondent denies negligence, and the case turns on this issue.

The libel was filed in the district court, but because of the disqualification of Judge Swan, the district judge, who had been of counsel, the case was certified to the circuit court, where the evidence already taken before Judge Brown in the district court was presented, and the case argued before me. I called to my assistance, as assessors, two gentlemen who for many years had been captains in charge of steamers on the lake, and have advised with them in reaching my conclusion as to the effect of the evidence.

It is not disputed that the tug, with her tow, left Au Sable, which is on the north side of Saginaw bay, at its mouth, some time after 8 o'clock, and before 9, on the night of the 13th of August, 1888, and that when she left there was little or no breeze blowing. About half past 11, when the tug and her tow must have been about halfway across the mouth of the bay, which is there from 28 to 30 miles wide, the captain of the dredge boat hailed the captain of the tug, and asked him whether they would not better go back. The captain replied that they were halfway across; that he thought he might as well go on. They went on until between 1 and 2 o'clock, when the heavy crane and dipper of the dredge, secured by chains, broke loose from its fastenings, and revolved from one side to the other of the dredge. The tug hauled up into the wind to give the men on the dredge time to secure the crane. After about an hour the crane was secured, and lashed with another chain, and the tug proceeded on its way, turning from its course across the mouth of the bay to a point a little inside the bay, called Port Austin. When about eight miles from Port Austin, at 8 o'clock in the morning, the men on the dredge whistled the danger signal. The tug rounded to, and succeeded in taking off the men before the dredge sunk. The two scows were left in the lake, where they were picked up the next day, and the tug went on to Sand Beach, a point on the lake near the mouth of the bay.

The claim of the libelants was that it was the duty of the master of the tug, when first hailed, to turn around, and go back; that it was negligence in him not to do so, and that, if he had done so, he might have safely brought the dredge back to Au Sable. This depends on what the condition of the sea was at the time the suggestion came from the captain of the dredge. It is quite clear that for some time out of Au Sable the sea was smooth, and I am of opinion

that the weight of the evidence is that while there was some little sea on at the time of the first hail, at half past 11, it was not of such a character as to indicate danger to the dredge. The captain of the dredge put the question to the captain of the tug in a merely suggestive way, to get his opinion, and did not request him, or direct him, to turn back. They were then halfway over, and, while it may be that, if they had turned back, they might have been able to reach smooth water more quickly than by going over, because of the protection which the high hills about Au Sable would furnish against the wind, this is by no means certain; and it could hardly be called negligence or want of good seamanship, in the captain of the tug, in not turning about then. It would seem, from the weight of the evidence, that the sea increased somewhat in roughness as they proceeded towards the other side, but that it was by no means a heavy sea. It was merely a fresh breeze, which rolled the dredge a good deal because of its peculiar shape and construction. It had a flat bottom, shallow hull, with open hatchways, and was not particularly well shaped to withstand any sea at all. The evidence of the men at the life-saving station on the south side of Saginaw bay, and the daily official record, is quite strong evidence that there was nothing like a heavy wind blowing on the bay that night. The waves ran high enough, doubtless, to shake the dredge considerably; but if she had been a staunch boat, and if the accident to which I am about to allude had not happened, she would probably have stood any sea that was running that night, and would have been brought safely into port on the other side.

The crane used in operating the dredge consisted of two beams at right angles, making an L, the upright part of which was about 18 feet long, with its lower end pivoted to the deck of the dredge so as to permit the horizontal part, reaching out over the bow some 20 feet, to swing radially about the upright beam as a center. At the end of this beam was suspended or lashed a dipper weighing 1,200 pounds. The horizontal swinging arm of the crane was fastened by two chains, from 18 to 20 feet long, connecting the anchor posts with the end of the crane. These chains were three sixteenths of an inch in size, and the moment the dredge began to roll the strain on each end of the chains became very great. The assessors inform me, and the evidence is confirmatory of their view, that a three-sixteenths inch chain, for such a purpose, was wholly inadequate, and that it was negligence on the part of the dredge owner so insufficiently to secure the crane. The assessors state that, in their opinion, the revolving from side to side of the heavy arm and dipper, in waves of any size at all, would tend to lift the other end of the dredge out of the water, and bring it down again with pounding force, so as to subject the bottom planking of the hull of the dredge boat to a great strain, and that if the boat were old, and not strong, the strain might easily spring the bottom open, and allow the water to come through, and sink the dredge. The weight of the evidence shows that the sinking of the dredge was quite sudden, that it followed immediately the danger whistles, and that it was with considerable difficulty that the people were taken off.

There is some evidence tending to show that the captain of the dredge—one of the complainants—stated that the sinking was very sudden, and that the probable cause of it was a springing or straining of the bottom boards of the dredge. While the admission is not proven with sufficient strength of evidence to justify the court, with that alone, in reaching the conclusion that this is the explanation, other circumstances which are brought out in the evidence, taken together with the statement, confirm me in the view that the sinking of the dredge would not have occurred but for the negligent weakness of the chains securing the crane, and the old and unseaworthy condition of the hull of the dredge. The burden is upon the libelants to show that the sinking occurred through the negligence of the respondent, and I am quite clear that this burden has not been sustained. In this conclusion the assessors agree with me.

The libel will therefore be dismissed.