## THE LADY WIMETT.

### (District Court, N. D. New York. February 27, 1899.)

1. **TUG AND TOW—LIABILITY OF TUG FOR INJURY OF TOW—MEASURE OF CARE REQUIRED.**
   A tug is neither a common carrier nor an insurer, and is bound only to the exercise of ordinary care for the safety of a tow, and when using such care she is not liable for the sudden sheering of the tow.

2. **SAME—BURDEN OF PROOF.**
   The burden is on a libelant seeking to recover damages from a tug for an injury to a tow to prove that the tow was not handled with that degree of skill which prudent navigators usually employ in similar circumstances.

3. **SAME—SHEERING OF TOW—USE OF BRIDLE.**
   The Lady Wimett, a steam canal boat, undertook to tow another canal boat from Black Rock Harbor to Buffalo Harbor through the Erie Basin. The vessels met another tug and tow when about entering the basin, which compelled them to keep near the right side of the channel; and when close to a pier the tow took a sudden sheer to starboard, the chock and cleat gave way when the tug attempted to overcome the sheer, and the tow struck the pier and was sunk. There was nothing unusual in the undertaking of the tug, nor in the state of the wind or water, to render it more than usually hazardous. The hawser was of the usual length, and the chock and cleat were, so far as was or should have been known by the Wimett, in good condition. Both vessels were properly manned and managed. *Held*, that there was nothing in such evidence to show that the tug was in fault, nor could fault be imputed to her because of a failure to use a bridle, which was not usual, nor required for the towing of a single canal boat.

This is a libel, filed by the Deering Harvester Company and Emile Thiele, as owners of the cargo of the canal boat Niobe, to recover damages for the loss of the cargo alleged to have been occasioned by the negligence of the steamer Lady Wimett while towing the canal boat from Black Rock Harbor to the harbor of Buffalo.

On the morning of August 10, 1897, the Lady Wimett, a steam canal boat, with her consorts, the Niobe and two other canal boats, was lying at Black Rock Harbor, having arrived the previous evening. She was destined for Buffalo. The canal was closed between Black Rock and Buffalo, owing to repairs which were being made. It was, therefore, necessary for the boats, in order to reach the port of Buffalo, to take the outside course through Black Rock Harbor and the Erie Basin. When the fleet had reached a point near the southerly end of Bird Island pier the two tow boats were taken in charge by a tug, and the Niobe was uncoupled from her position as push boat and taken in tow by the Wimett. The line was of the ordinary size, was about 35 feet in length and was fastened to the boats in the usual way. There was a fresh breeze, about 10 or 12 miles an hour, blowing down the lake, which

caused a choppy sea for a short distance in the open space between the ends of the piers. As the Wimett approached the Erie Basin the tug Little with two mud scows in tow was seen coming out of the basin bound down the river. The Wimett passed the Little about 50 or 75 feet to the right, the Little hugging the shore side of the channel and actually passing over the buoy which marks the edge of the channel at that point. When a short distance from the Erie Basin pier the Niobe sheered to starboard. Immediately the Wimett starboarded her helm and opened her engine endeavoring by these means to overcome the sheer. While in this position, the Niobe sheering to starboard and the Wimett pulling to port, the chock on the Niobe broke and immediately thereafter the cleat gave way, leaving the Niobe helpless. She continued her sheer towards the pier, struck against the rocks and sank soon afterwards.

The faults charged by the libelants against the Lady Wimett are as follows: First. Taking a course too close to the end of the breakwater. Second. Not securing the assistance of a tug. Third. Towing with too long a line and no bridle. Fourth. Not having a competent crew. Fifth. Not clearing the breakwater. Sixth. Not noticing the sheer of the canal boat in time. Seventh. Turning and going ahead too suddenly in attempting to correct the sheer. Eighth. Not taking proper steps to keep the Niobe on her course. Ninth. Not approaching the breakwater with sufficient caution.

John W. Ingram, for libelants.

George S. Potter, for claimant.

COXE, District Judge (after stating the facts as above). A tug is neither a common carrier nor an insurer. She is bound to use reasonable skill and care and is liable when the absence of these is established. The Margaret, 94 U. S. 494; Milton v. Steamboat Co., 37 N. Y. 210; The Webb, 14 Wall. 406. A tug, using ordinary care, is not liable for the sudden sheering of the tow. The Stranger, 1 Brown, Adm. 281, Fed. Cas. No. 13,525. The burden is upon the libelants to prove that the tug failed to tow the canal boat with that degree of skill which prudent navigators usually employ in similar circumstances. The Hercules, 55 Fed. 120; Pederson v. Spreckles, 31 C. C. A. 308, 87 Fed. 938; The MacCaulley, 84 Fed. 500. The libelants have failed to prove any of the accusations against the steamer. The fleet, which depended upon the Wimett for propulsion in the canal, consisted of the Niobe, which was pushed ahead, and two other boats which were towed behind. Arriving at the end of Bird Island pier this fleet was broken up. The Niobe was taken in tow by the Wimett and the other boats were given in charge of a tug. This indicated rather unusual care and prudence on the part of the master of the Wimett. A more reckless navigator would have undertaken to handle the entire fleet. The towline was of the usual length, about 35 feet, and was made fast in the ordinary way. It was broad daylight. There was nothing unusual in the condition of the wind or water. The trip was a short one, most of the distance being through channels well guarded by breakwaters and offering no unusual impediments to safe navigation. There was a fresh breeze blowing down the lake and for a short distance between the ends of the piers there was a choppy sea, but there is an entire absence of proof that the conditions were such as to warrant a moment's hesitation in the mind of a prudent navigator as to the safety of the journey. The course which the Wimett took was the usual one, except that the presence of the Little and

her tow compelled the Wimett to keep to the right of the channel. When the Niobe encountered the return current near the end of the Erie Basin pier she took a decided sheer to starboard. The Wimett endeavored to overcome this sheer by every means in her power and would, in all probability, have succeeded had not the chock and cleat given way in succession, leaving the Niobe helplessly adrift. The libelants' witnesses are of the opinion that the chock and cleat did not break until the Niobe struck the pier, but the great preponderance of evidence is the other way. The libelants' witnesses were several hundred feet distant, while those of the claimant were on the Niobe and the Wimett or in the immediate vicinity of the disaster. If the collision with the pier were caused by the breaking of the chock on the Niobe it is plain that the Wimett is not liable. The evidence is uncontradicted that both the chock and cleat were staunch and strong, and even if insufficient there is not the slightest proof that the master of the Wimett knew or should have known of any defect.

The court has read the entire testimony, having in mind the allegations of fault against the Wimett, and is forced to the conclusion that none of them has been established. Some of these accusations are of the most vague and general character, others are unsupported by the testimony and others still are positively disproved. The Wimett's course was not too close to the breakwater. It was the course followed by all vessels coming out of or going into the Erie Basin. There was no occasion for the assistance of a tug. The Wimett was entirely capable of towing a single canal boat to Buffalo and there is no reliable testimony to the contrary. The line was the ordinary length, and the pretense that a bridle was necessary seems wholly without support. During an experience of 15 years the court has never known of an instance where a single canal boat was towed with a bridle and has never known or heard of a case where its absence was imputed as a fault. Indeed, the principal reason for using a bridle would seem to be absent in such circumstances.

There is nothing to sustain the proposition that the Wimett and Niobe were improperly manned. On the contrary, the crew was composed of men of more than ordinary experience and intelligence. Two men were at the Niobe's tiller and everything which could be done to overcome the sheer was done on both boats. The proposition that the Wimett turned and went ahead too suddenly after the Niobe began to sheer is not sustained by the evidence. Indeed, it is a matter of common knowledge that a steam canal boat has none of the characteristics of a tug in this respect. They are built to traverse a sluggish waterway at a slow rate of speed and are incapable of executing the swift and powerful maneuvers often required of tugs.

In short, it seems to the court that an impartial mind on reading this record must reach the conclusion that the libelants have failed to establish any fault on the part of the libeled vessel. It follows that the libel must be dismissed.