## THE THOMAS WILSON.

(District Court, N. D. New York. August 19, 1903.)

**1. Tug and Tow—Liability of Tug for Injury of Tow.**

There is no presumption that an injury to a tow was due to the fault of the tug, but her negligence must be proved as a fact, and the proof must be such as to justify the inference, at least, that such negligence caused, or at least contributed to, the injury, before she can be held liable for the consequent damage.

**2. Same—Tow in Charge of Crew—Duty to Follow Tug.**

Where a tow is in charge of her own officers and crew, the tug has the right to demand and expect the exercise by them of ordinary care and skill, and that the tow will follow the course of the tug, and conform to her movements, as is its duty, unless such course would manifestly lead it into danger.

**3. Same.**

When a tug with three barges in tow, in line, rounded a curve in Galop's Canal, on the St. Lawrence river, the second barge, which was on a single line, 150 feet behind the first, failed to turn, and ran into a bank on the side of the canal, where there had been recent dredging, and over which the water was shallow, and was injured. The first barge, which was on a line of similar length, followed the tug in safety. The line of the bank was marked by stakes. *Held*, under the evidence, that there was no fault on the part of the tug, either in making up the tow or in navigation, but that the injury was due to the fault of the master of the barge, in failing to be in a position where he could give proper attention to his surroundings and to follow the tug.

In Admiralty. Suit to charge tug with liability for an injury to a tow.

The libel in this case was filed January 15, 1900, against the tug Thomas Wilson, her engines, boilers, etc., owned by the George Hall Coal Company; and the claim is that the said tug is responsible for injuries to the barge

Henry W. Sage, which injuries were received on or about the 9th day of May, 1899, while being towed, in connection with two other barges, the Ewen and Shawnee, by the said Thomas Wilson, through Galop's Canal, on the St. Lawrence river, whereby, it is alleged, the said barge Sage sustained damage to her fixtures, in loss of time, and for expenses of her master and crew, and otherwise, to the amount of $2,000. It is claimed that the said injuries and damage were caused solely by the negligence and want of skill and the improper and unseamanlike conduct of and on the part of the persons navigating and in control of and on board the said tug Thomas Wilson, and not by or through any fault, omission, or neglect on the part of the libelants, or the persons on board the said barge Sage. The owners of the tug deny any negligence on their part, or on the part of those in charge of the Thomas Wilson, and allege that the damage to the said barge Sage was occasioned through the fault and negligence of those in charge of the Sage.

Potter & Wright, for libelants.

Goulder, Holding & Masten and George E. Van Kennen, for respondent.

RAY, District Judge (after stating the facts). On the 9th day of May, 1899, the barges Ewen, Sage, and Shawnee had been locked into Galop's Canal from the St. Lawrence river for the purpose of being towed through said canal, and onward to their destination. On that day they were taken in tow, pursuant to the ordinary contract and agreement, by the Wilson, in the order named; and it is claimed that in picking up the tows the tug Wilson was careless and negligent, in not properly attaching the tows to the tug. The owners of the tug did not have charge of the Sage, which was in possession of and under the control of its own crew, except, of course, as it was drawn by the tug. The canal was being deepened and widened at the time of this accident. This deepening and widening had been completed for a distance of about 2,400 feet from the lower lock toward Ogdensburg. Beyond the point where the new channel had been completed, 2,400 feet above the lock, the work of deepening and widening the canal was still going on. A cut about 10 feet wide had been made by dredging along the north or starboard side of the canal for a distance of about 600 feet. This cut gave the channel a depth of about 17½ feet, with a width of 90 feet at the bottom, but the north bank of the canal made by this cut had not been made smooth or sloped. This left a rocky wall, some 11 or 12 feet high, with water above it only 5 or 6 feet deep, and this bank continued or extended for a distance of some 400 or 500 feet along the north bank of the canal. It formed the limit of the channel on that side, and was marked by red stakes. As the Wilson, with her tow, came up the canal, a dredge 80 feet long lay moored on the south or port bank, about opposite the red stake which the Wilson would first pass in coming from the lock. The first red stake was some 20 or 25 feet nearer the lock than the lower end of the dredge. This left about 70 feet between the side of the dredge nearest the north bank and the line of red stakes. The master of the Wilson did not know the exact distance, but he could see the dredge and the stakes. This dredge had been placed in the channel on the south side either that morning or recently. Beyond the dredge lay a scow 70 feet long on the south

side of the channel, and the starboard side of that scow was about even with or a little inside the starboard side of the dredge. About 50 feet beyond the scow, and on the south or port bank, lay the Curlew, 77 feet long, with her starboard side on an even line with the starboard or north side of the dredge. These obstructions placed there by those engaged in widening the canal, of course, reduced the channel to a width of about 70 feet. The bow of the Sage drew about seven feet of water, and would necessarily run into the bank if towed or swung to the north or starboard of the line of those red stakes. This condition of things, narrowing the channel, of course, interfered with the ability of the vessels in tow to maneuver or swing in passing through the canal, and, of course, made the place somewhat dangerous. The day was bright and clear, and the condition of things described could be seen by those on board the tug Wilson as well as by those on board the tow. It is said, and is probably true, that the master of the Wilson did not know the exact length or the exact draft of the barges in tow. It is probably true that he did not know of the condition of the wall bank mentioned, as it had been made recently, and was being extended. However, it was his duty to have all these conditions in mind, to a certain extent, and guard against hidden or unknown dangers.

The Ewen was attached to the Wilson, and the Sage was attached to the Ewen, on long single lines, and the Shawnee was attached to the Sage by short double lines. It is claimed that a tow made up and attached in this way could not be taken through the canal safely. Before reaching the canal or attempting to enter it or entering it, those in charge of the Sage knew this condition of things, if it existed as described and as claimed, as well as the master of the Wilson. It is claimed that the Ewen was about 150 feet aft the tug, the Sage 150 feet aft the Ewen, and the Shawnee only about 15 or 25 feet aft the Sage. The evidence as to the make-up of the tow is somewhat contradictory, and some of it is unreliable, but, assuming it to be true as claimed by the libelants, the question is, did this make-up of the tow cause or contribute to the accident and damage in question? The captain and mate of the tug admit that the Ewen was fast to the tug on a single line, but say she was only 15 or 20 feet aft the stern of the tug. The captain of the Ewen says there was 150 feet of clear water.

There is also a dispute as to the speed of the tug. Some of the witnesses claim that the speed was five or six miles an hour, while others say it was not over two miles per hour. Considering all the evidence, this court is of the opinion that neither estimate is correct, and that the tug was probably proceeding at from three to four miles per hour—less rather than more.

It is claimed that the tug did not give sufficient time to properly make up the tow. There is a dispute in the evidence in regard to this. This court is unable to find, considering all the evidence and all the circumstances, that sufficient time was not given to properly make up the tow. There is evidence that those in charge of the tows willfully neglected to obey the instructions of the master of the tug in this respect, but, however this may be, the court is of the

opinion that the mode and manner of attaching the barges in tow to the tug had nothing whatever to do with the accident and consequent injury.

From the map in evidence it appears that while the canal is straight at the points opposite the dredge, scow, and Curlew, and for some little distance easterly thereof, there is a curve in the canal before reaching the point where the dredge was located, and opposite the easterly end of which is found the first red buoy. It is perfectly apparent that, in approaching the point where the dredge is located, the tug Wilson must have been headed in a direction which, if persisted in, would have carried tug and tows into the north or starboard bank of the canal before reaching the dredge, or when somewhat near it. It was therefore necessary for the tug Wilson to change her direction more to the south, and it was incumbent on those on board the tows to keep a strict watch, and change direction so as to follow in the wake of the tug. It is also apparent that when the tug Wilson, with her tow, rounded the curve in the canal, had she kept straight ahead, she inevitably would have gone into the dredge, or so close thereto as to have endangered the tug and all three barges. It may be, and possibly is, true that the master of the tug made a mistake in judgment in changing direction, and may not have changed his direction soon enough, or he may have changed too soon. The evidence convinces the court that the tug Wilson entered the channel between the dredge and the first red buoy, headed in a proper direction, straight ahead to the westward, and was followed by the Ewen. Had the captain of the Sage been where he ought to have been, in some elevated position, where he could see not only the tug, but ahead of it—the buoys, the dredge, scow, and Curlew—and had he been carefully watching, and had he had a competent man at the wheel, and had proper directions been given by him as to a change of course, the accident would not have happened. The evidence is that at some point near the dredge and first red buoy the captain of the Sage, who was at the wheel, where he was unable to see the whole situation, left the wheel in charge of another person, and went to the side of the barge, and then back. The court is unable to ascertain or determine just how long he was absent from the wheel, but it is evident that he was absent long enough to allow the barge Sage to either sheer to the north, or continue northerly, when it should have changed its course more to the south, so as to follow the tug Wilson, and that, by reason of this carelessness and negligence on the part of the captain of the Sage, that vessel ran into the bank or wall of stone near the first red buoy, and received the injuries and sustained the damages mentioned. When the tug Wilson changed direction after passing the curve in the canal, wherever that change was made, it was necessary for the captains of the barges in tow, respectively, to be on the watch, and promptly change the direction of the barges to some extent before reaching the point where the tug Wilson changed its direction. These barges, being drawn by the tug and under headway, with no means of checking their velocity, whatever it was, were sure to go ahead some distance, on substantially the same line pursued by the tug, after reaching the

point where the tug changed its course, for, whether the lines were long or short, the change of direction made by the tug would not be communicated to the tow immediately, but only after the connecting lines were drawn taut on the new course. It is evident from the evidence that no one was expecting particular trouble at this point. The master of the tug was not in fault for not knowing the location of the dredge, scow, and Curlew, for they had been placed where they were too recently, and it was not incumbent on the master of the tug to go ahead of his tug in another vessel of some description and make a survey of the canal. It was, of course, incumbent on him to keep a proper lookout, and to change direction so as to avoid the shallow water and rocky bank on the north side, while also avoiding the dredge and scow placed in the channel on the south or port side. This the tug did, and the Ewen followed, and sustained no damage. The Ewen was drawn by the tug, and its course and velocity were shaped by that of the tug. How is it, if the tug pursued the erratic course some of the witnesses claim, that the Ewen did not run into the shallow water and upon the rocky bank? It is perfectly evident that those in charge of that barge attended to their duty, and met with no difficulty in following the tug in the channel proper, and in deep water. It is also perfectly evident that the injured barge sustained its damage by want of attention on the part of those in charge, by reason of which, and improper or negligent steering, she ran into the rocky bank and received the injuries complained of. It was incumbent upon the master of the tug to use ordinary care and diligence, and greater diligence when he approached and reached the point where the dredge was located, on account of its being found there. The greater the apparent danger, the greater the care required on the part of the master of the tug. But the same rule applies to those in charge of the injured barge, and this care, and even ordinary care, is not shown to have been exercised by those in charge of the Sage.

This court therefore finds and holds as a fact in the case that the tug Wilson exercised due care at the points mentioned, that those in charge of the Sage failed to exercise due or ordinary care in the management of the barge, and that because of this negligence the accident occurred and the injuries were sustained. This court finds and holds that the length of the lines attaching the barges to the tug had nothing whatever to do with the accident; that, had the lines been shorter, and double lines in place of single lines, and had the management of the barge Sage been the same, quite likely and probably the damage and injuries would have been greater than they were.

There is no presumption that the tug was negligent. Her negligence must be proved as a fact, and the proof must be such as to warrant the inference, at least, that such negligence caused, or at least contributed to, the injury and damage. The W. H. Simpson, 80 Fed. 153, 25 C. C. A. 318; The Lady Wimett (D. C.) 92 Fed. 399, affirmed 99 Fed. 1004, 40 C. C. A. 212; The L. P. Dayton, 120 U. S. 337, 7 Sup. Ct. 568, 30 L. Ed. 669. Negligence which did not cause or contribute to the injury is of no account in this case. When

a tow is in charge of her own officers and crew, as in this case, the tug has the right to demand and expect the exercise by them of ordinary care and skill. Pederson v. Spreckles, 87 Fed. 938, 31 C. C. A. 308. The tow must follow the course of the tug, and conform to her movements. The Stranger, 1 Brown, Adm. 281, Fed. Cas. No. 13,525; 1 Asp. M. L. C. 19; The Ciampa Emilia (D. C.) 46 Fed. 866; The Jacob Brandow (D. C.) 39 Fed. 831, 832. Of course, such a rule would not apply if those in charge of the tow saw the tug running into danger, and dragging it there also. In such case it would be the duty of the tow to use all means to avoid the danger, and even cut loose if necessary.

In this case the evidence shows that the Sage did not follow the Ewen, having an equally long line, but went on to starboard, the north side of the canal, until she struck and was run into by the Shawnee. There is evidence that she sheered to the north, but it is not necessary to find that she sheered from her course in following the tug and Ewen as they were going before the course was changed more to the westward, as her fault lay in not changing her course so as to follow the preceding vessels. She could not in that narrow canal at that point rely on the line and tug to change her course in time. Any person of good sense, in the exercise of ordinary care, would have seen this. The master of the Sage was at the wheel, where he could not see what he ought to have seen, and that which had he seen he would have avoided. This court does not credit the evidence to the effect that when opposite the scow the tug sheered to starboard and then to port (north and then south). There was no reason for such action. Had she done so at that point, the Sage would not have been run into the north bank by such erratic movements—movements made as quickly as these are alleged to have been made. It is claimed by the libelants that the swing of the stern of the Ewen carried the Sage to starboard, and into the rocky bank covered by shallow water. This is hardly possible. It is not probable. It is a theory, not a fact, in the judgment of this court. With over 100 feet of line connecting the Ewen and Sage, the swing of the stern of the Ewen to starboard in changing her course to follow the tug would have been hardly perceptible in affecting the course of the Sage. Ordinary care and watchfulness on the part of the captain of the Sage would have avoided all evil consequences, in any event. The burden of proof is on the libelants. This has not been sustained.

It follows that the libel must be dismissed, with costs. So ordered.