## THE EL RIO.

(District Court, S. D. Alabama.   April 3, 1908.)

### No. 1,166.

1. TOWAGE — CARE REQUIRED OF TUG — LIABILITY FOR INJURY TO TOW—"COMMON CARRIER."

A towing tug is not a "common carrier" nor an insurer, and is bound only to the exercise of reasonable skill and care taking into consideration the fact that it contracts as an expert and is bound to know the channel and its usual currents and dangers and to avoid obstructions which ought to be known to men experienced in its navigation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Towage, § 4.

For other definitions, see Words and Phrases, vol. 2, pp. 1313–1319; vol. 8, p. 760.]

2. SAME—BURDEN OF PROOF.

The mere occurrence of an accident to a tow raises no presumption of negligence against the tug, and the burden is on the complaining party to show a lack of ordinary care.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Towage, § 34.]

3. SAME—EVIDENCE CONSIDERED—TOWAGE OF LOG RAFTS.

A tug which undertook the towage of three rafts of logs tied up in a river held not chargeable with negligence for the breaking up of one of the rafts by the current of the stream when the tow was being made up, but liable for the breaking of one of the other two by striking against a tree while being towed, on the ground that the tow was not properly made up, and that the tow line was too long for safe towing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Towage, §§ 15, 20.]

In Admiralty.   Libel and cross-libel.

Stevens & Lyons, for libelant.
Roach & Chamberlain, for claimant.

TOULMIN, District Judge.   In this case, as has been said in another:

"The difficulty arises not in the law, but in the ascertainment of the facts from the evidence, which in cases like the present is usually conflicting."

This one furnishes no exception to the rule.

The law is well settled that a tug is neither a common carrier nor an insurer, nor is the highest degree of skill and care exacted of her. She is bound to exercise reasonable skill and care in the performance of the duty assumed, and failure therein is gross fault creating liability for injury.   A tug is liable only for ordinary care, as measured by prudent men of that profession.   The mere occurrence of an accident raises no presumption of negligence against the tug, and the burden is on the complaining party to show a lack of ordinary care.   The burden of proof is put upon the libelant to satisfy the court upon the evidence presented and upon the reasonable probabilities of the case that the tug was guilty of the fault charged through failure to exercise ordinary skill and care.   The W. H. Simpson, 80 Fed. 153, 25 C. C. A. 318;   The Lady Wimett (D. C.) 92 Fed. 399.   The ordinary care required of those engaged in the profession of towing is a high one, for they hold themselves out as experts.   They must know the channel

and its usual currents and dangers and the proper method of making up tows. A tug is liable for striking upon obstructions in the channel which ought to be known to men experienced in its navigation. The A. R. Robinson (D. C.) 57 Fed. 667; The Margaret, 94 U. S. 494, 24 L. Ed. 146; Transportation Line v. Hope, 95 U. S. 297, 24 L. Ed. 477; The Webb, 14 Wall. 406, 20 L. Ed. 774. The burden is upon the libelant to prove that the tug failed to tow the rafts with that degree of skill which prudent navigators usually employ in similar circumstances. Authorities supra.

The libelant alleges and contends that the tug was guilty of great negligence, want of skill and care in that: First, the master of the tug was unskilled and incompetent to properly command and handle the tug while attempting the towing; second, that said master negligently undertook to tow said rafts at a time and under conditions which made such undertaking dangerous and hazardous to said rafts; and, third, that said master failed to use reasonable skill, diligence, and care in the manner in which he commanded and handled the said tug and tow after said tug took hold of said rafts to tow the same.

As to the first contention, the court finds that the libelant has not met the burden resting on it to make good this contention. Its proof is, in my opinion, wholly insufficient to sustain the charge that the master of the tug was incompetent to properly command and handle the tug while attempting the towing.

As to the second proposition, the court finds no satisfactory proof that the master of the tug negligently undertook to tow said rafts at the time and under conditions then existing. The claim is that the conditions were such as made the undertaking dangerous and hazardous to said rafts, in that the water in Middle river, in which the rafts were moored, was somewhat higher than usual, and that the current was unusually strong and rapid. There was no direct proof that there was any extraordinary danger or hazard in undertaking to tow the rafts at that time and under the conditions mentioned. In fact, the evidence is that a tug or tow of rafts left the same locality the evening before under similar conditions as to water and current and without disaster or special hazard so far as appears from the evidence. Besides, so far as the two rafts, which the tug took in tow, were concerned, the condition of the river as to water and current had no effect. It caused no loss or accident to them. But the force of the current in the river had a disastrous effect on the inner raft of the three rafts, all of which were tied to the river bank, by carrying it from its moorings, breaking it up, and scattering the logs composing it about the river for some distance below its starting point.

It is alleged in the libel that this raft was tied to the bank by a line or rope, and that this line was broken by the force of the current, and the raft thus loosened was driven from its situation, broken up, and scattered. The contention of libelant in the evidence and on argument is that the raft was tied to the bank, and that when the tug proceeded to fasten its tow line to the middle and outside rafts with the view of making up its tow, the master of the tug ordered the men who were on the rafts to let go the line with which the rafts, including the inner one, were tied to the bank, and by the tug's removing the

two outside rafts the inner one became exposed to the full force of the current, and thus the disaster to said inner raft occurred; the two men on the raft having obeyed the said order of the master. It is contended that this order of the master was not only an improper order at the time and under the circumstances, but evinced great want of skill and care. The two men on the rafts were men sent by libelant with boat and gear to go upon the rafts to assist in handling them and to remain on them while being towed that they might be properly protected and cared for. These men were witnesses for libelant, and their evidence was the basis for the contention last referred to. The master of the tug denied that he gave the order to the men on the rafts to untie the inner raft from the bank, as testified to by them. On the contrary, he testified that he ordered them to tie and make fast to the bank the inner raft if it was not already so tied, and to let loose the other two rafts from the inner one as he was going to pull them out and drop them down to a safer place to make up his tow, where he would tie them and return for the third raft. He contradicts the two witnesses referred to in other material respects, and in this was corroborated by the engineer of the tug.

The third contention is that the master failed to use reasonable skill, diligence, care, and caution in the manner in which he handled the said tug and tow after the tug took hold of said rafts to tow the same. My opinion is that this contention is well made, and that the master of the tug, in allowing the small raft of the two he had in tow to collide with the tree, as shown by the evidence, was guilty of negligence. That he failed to exercise due care and caution in towing the rafts in that part of the river where the collision occurred, I think, is clear. He testified that his tow line was from 150 to 200 feet long, and that the rafts were towed side by side, and not one behind the other, as the evidence showed was the proper and usual way. The evidence also showed that there were many bends in the river, and that the collision occurred in a bend. The evidence also showed that good pilotage required a much shorter tow line to be used in towing rafts in that river than the one used in this instance; that towing around these bends the tow could be handled and controlled better and more successfully by a line of 50 or 60 feet. The weight of the evidence showed that the line was about 150 feet. The libelant's two men who were on the rafts testified that the collision was caused by having too long a tow line, although it was, in their opinion, only about 60 feet. And the evidence tended to show that there was plenty of room in the river to the westward of the tree for the tug and tow to have passed without trouble. The master of the tug testified that 15 or 20 logs were lost out of the raft by its collision with the tree.

The evidence shows that the tug delivered to the libelant 137 logs for which the respondent in his cross-libel claims the contract price of 22 cents a log; and also claims for the use of his tug in picking up these logs, being some of those which were lost out of the two rafts which had been broken. There was no evidence of the number of logs in either of the rafts. The libelant claims he lost 142 logs. The evidence showed that at least 137 logs were picked up and delivered to libelant by respondent's tug, and that 97 were likewise picked up

and delivered by one Chamberlain and for which libelant paid Chamberlain $38.75. How many of these logs came out of each raft was not ascertained. The raft which remained intact containing 124 logs, and which was never delivered by the respondent's tug to the libelant, and was subsequently taken by the libelant from the point where it had been left by the tug, was at libelant's cost towed to its destination.

As I understand libelant's claim, it is for the value of 142 logs which he claims were lost by the negligence of the tug's master, and he also claims the expenses incurred in recovering other logs than those delivered by respondent's tug, admitting his liability to the tug for 137 logs delivered by her at 22 cents a log. The tug's owner claims not only this sum, but also hire for the use of the tug in picking up and saving the said 137 logs. The claim last mentioned is based on an alleged agreement and promise of one Meaher that the said owner would be paid extra for the tug's service. Meaher was an employé of libelant to whom the master of the tug reported the disastrous condition of things and asked for advice or instructions. Meaher denied having made any such agreement or promise as alleged, but testified that he stated to the owner and master that the tug should return and endeavor to save the logs; that the tug was responsible for them; that he could not promise that the tug should be paid extra for the service; that he had no authority to do so, but that to aid them in the work he would furnish them some men and gear, which he did; that this was all he agreed to do, and this he did. He had no authority to bind the libelant and did not assume to do so.

The proof is not sufficient, in my opinion, to show with any degree of clearness a want of ordinary care and skill on the part of the tug so as to entitle the libelant to damages for the loss of the logs from the raft called the "inside raft," being the one next to the bank, as to which there is conflict of evidence whether the tow·line of the tug was or was not at any time fastened to it; and also whether the master of the tug did or did not order the line on said raft to be made fast to the bank or to be loosed therefrom. Moreover, my opinion is that the libelant's men, who were on the rafts for the purpose of protecting and caring for them, should have seen the necessity of tying the inner raft to the bank, if not already securely fastened. I think this was their duty, under the circumstances shown, irrespective of an order from the master of the tug.

I do not think that the cross-libelant should recover hire for the tug.

I find that the libelant owes the tug the sum of $53.89. I also find the libelant paid Chamberlain $38.75 for the logs picked up by him and delivered to libelant. I further find that the libelant incurred expense in towing the raft of 124 logs to its destination, which service the respondent undertook to perform and abandoned, thus breaking its contract, and, while the amount of that expense is not definitely shown, I take it 22 cents a log is a reasonable amount to be allowed from evidence in the case, aggregating $27.28, which I award the libelant as damages. Thus I find libelant entitled to $66.03, and the cross-libelant entitled to $53.89. Deduct $53.89 from $66.03, and it leaves a balance due libelant of $12.14, for which a decree will be entered.