## Case No. 3,737.

### The DEER.

[4 Ben. 352;[1] 4 Am. Law T. Rep. 142.]

District Court, S. D. New York. Nov. Term, 1870.

#### TUG AND TOW—NEGLIGENCE — PLEADING—UNSEA-WORTHINESS.

1. A tug is liable for damages, resulting from negligence in her navigation, to a vessel in tow, whether she is towing under a contract or not.

[Cited in The Merrimac. Case No. 9,478; Jennings v Muller, Id. 7,282. Quoted in The M. J. Cummings, 18 Fed. 182; The M. Vandercook, 24 Fed. 476.]

2. A tug was towing a barge to a bulkhead, near which was a sunken pier, whose presence was known to the master of the tug, and on which the barge struck: Held, that the running of the barge upon the pier was conclusive evidence of negligence on the part of the tug, in the absence of proof of any vis major.

[Cited in The Narragansett, 20 Fed. 398.]

3. A libel charged that the existence of the sunken pier was known to the tug, and that, in place of avoiding it. the tug towed the barge upon it, but did not aver that it was done negligently, and the answer averred that the accident was not the result of any negligence on the part of the tug, and the case was tried on those pleadings: Held, that the libellant might amend the libel, by averring negligence, and thus accepting the issue tendered by the claimant, and the issue which was in fact tried.

4. Where the defence was set up that a barge, injured by being towed against a sunken pier, was too heavily loaded and was too weak: Held, that as it was not shown that she was too heavily loaded for a barge which was to perform her voyage without being subjected to the blow which she received, nor that she was not sufficiently strong for the ordinary purposes of the voyage she was on, the defence was not available.

C. Van Santvoord, for libellant.

Brown, Hall & Vanderpoel, for claimant.

BLATCHFORD. District Judge. This is a libel to recover for the damages caused to a canal boat or barge and her cargo of brick, through her being run, while in tow of the steamboat Deer, on a sunken pier or dock at the foot of 25th street, East river, New York, on the 8th of May, 1869. The libellant was the owner of the boat, and had the cargo in charge as a common carrier. The libel alleges that the steamboat, for a consideration, undertook to tow the barge from the foot of Hubert street, North river. to a pier on the East river near the foot of 23d street; that, when she arrived off the foot of 23d street, she was directed to land the barge at the bulkhead between 25th and 26th streets, which she undertook to do; that, at the foot of 25th street, there was a sunken pier or dock, the existence of which was known to the persons navigating the steamboat; and that. in place of going sufficiently out into the channel, and avoiding the sunken pier, the steamboat towed the barge across or on the sunken pier, and caused her to

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

strike amidships against one of the spiles or ties of the sunken pier, knocking two holes in her bottom near the bilge, and causing her to sink.

The answer avers, that the contract of towage, for the consideration, was to tow the barge to the 23d street pier, and not to a pier near the foot of 23d street; that the steamboat took the barge to the foot of 23d street; that, on arriving near there, the steamboat, as a matter of accommodation purely, and gratuitously, and without any compensation paid or to be paid therefor, undertook to push the barge along to the bulkhead between 25th and 26th streets; that the existence of the sunken pier at the foot of 25th street was known to the persons navigating the steamboat, but they did not know its extent, boundary or exact location, and it was not marked by buoys or otherwise; that the tide was flood in the river, and there was an ebb eddy or reverse current along the piers, from 23d street and below, to 26th street and above; that a vessel was anchored opposite the bulkhead between 25th and 26th streets, in the edge of the flood-tide current; that the steamboat had this barge on her port side, and another barge on her starboard side; that it was necessary to keep the steamboat and her tows within the ebb eddy, and to pass to the bulkhead below the anchored vessels, in order to land the barge properly at the bulkhead; that the master of the barge knew all this; that, as the steamboat approached the end of the sunken pier, she stopped her wheels, and her master went on board of the barge and examined as to the location of the sunken pier, which was at the time covered with water to the depth of three or four feet; that the barge was at the time about 45 feet out beyond the outermost visible portion of the sunken pier; that the master of the steamboat, believing that the barge was outside of any part of the sunken pier, advised the pilot of the steamboat that it was safe to go ahead, and he went ahead; that, soon afterwards, the barge struck lightly on her port bow; that the steamboat immediately stopped her wheels; that, by direction of the master of the barge, and contrary to the advice of the master of the steamboat, the steamboat backed, and very soon afterwards the barge commenced sinking aft, by reason of having been pierced by some sunken and unknown pile or stick aft of amidships, and above light water mark; that such injuries were received while backing; that there was no negligence on the part of the steamboat; that the barge was old and weak, and her bottom was decayed, and it was negligence to load her with the weight of cargo she had; and that, if she had been less heavily loaded, or had been staunch, the piles would not have been driven through her, and she would not have been sunk or damaged.

The principal question of law involved in this case was considered by this court in the

case of The Brooklyn [Case No. 1,938]. If the steamboat was negligent in her navigation in towing the barge, whether she was towing under a contract of towage or not, she was as much guilty of a tort towards the barge, if the barge was injured through such negligence, as she would have been towards a third and strange vessel, which should have been injured through such negligence. Her duty not to be guilty of such negligence was imposed by the law, and existed even though the service of towing was gratuitous. The barge being lawfully where she was, the steamboat owed a duty towards her independent of any contract of towage, and is liable for any damage to her, caused by negligent navigation amounting to a breach of such duty, to the same extent that the steamboat would be liable, for such negligent navigation, to a vessel which she was not towing; or to the barge if not towing her, and to the same extent that a third vessel would be liable, for negligent navigation, to the barge. Philadelphia & R. R. Co. v. Derby, 14 How. [55 U. S.] 468, 485, 486. It is, therefore, unimportant to inquire whether the steamboat was under a contract for towage, express or implied, either a new one or an extension, for the same consideration, of the original one, at the time of the injury to the barge.

It is impossible not to say that the steamboat was guilty of negligence. The fact that the sunken pier was there was known to her, and yet she ran the barge upon it. There was no vis major that drove the steamboat with the barge upon it. The case is not one of inevitable accident, from stress of weather or some sudden outside controlling force. If the steamboat could, because of any vessel or vessels anchored outside, only reach the destination of the barge by going through a narrow space close to the sunken pier, she must be regarded as having taken all risks of the striking of the barge, it having been at her option to attempt or to decline to tow the barge through such space, which was clearly visible. The fact that the existence of the sunken pier was known to those navigating the steamboat makes the running of the barge upon it conclusive evidence of negligence, under the circumstances, in the absence of proof of any vis major.

It is objected, that the libel does not aver negligence in the steamboat, and puts the cause of action against her solely on the ground that she was a common carrier. It is true, that the libel does not use the word "negligence." It charges that the existence of the sunken pier was known to the steamboat, and that, in place of avoiding it, the steamboat towed the barge upon it. The answer tenders the issue of negligence, by averring that the accident was not the result of any negligence on the part of those managing the steamboat. On these averments, and the evidence, the libellant will be allowed to amend her libel, by averring negligence, and thus accepting the issue tendered by the claimant, and the issue which was in fact tried.

Whether the injury was caused while the steamboat was going ahead, or while she was backing, is immaterial, as the case stands. On the proofs, it was for the claimant to show that the stick or pile which was driven into the barge was no part of the sunken pier, and that, if it was backed upon, such backing upon it was not the direct consequence of the striking of the sunken pier, while going ahead. The steamboat was wholly under the management and control of her own officers.

The defence, that the barge would not have been damaged if she had been less heavily loaded, or had been stronger, is not available. It is not shown that she was too heavily loaded for a barge which was to perform her voyage without being subjected to the blow inflicted on this barge, nor is it shown that she was not sufficiently strong for the ordinary purposes of the voyage she was on. Amoskeag Manuf'g Co. v. The John Adams [Case No. 338]. There must be a decree for the libellant, for the damage done to both vessel and cargo, with costs, with a reference to a commissioner to ascertain and report the amount of such damages.

[NOTE. For statement of further proceedings in this case, see Case No. 3,738.]