## STEVENS *v.* THE WHITE CITY.

No. 217. Argued January 6, 1932.—Decided March 14, 1932.

196

Mr. Neil P. Cullom, with whom Mr. William F. Purdy
was on the brief, for petitioner.

*Mr. Chauncey I. Clark,* with whom *Messrs. Florence J. Sullivan, Sanford H. Cohen* and *Frederic Conger* were on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Petitioner, the assignee of the owner of a forty-five foot motorboat, the *Drifter,* filed a libel in admiralty in

the southern district of New York against respondent to recover for injury sustained by the former while being towed by the latter. The court held that the tug was a bailee of the tow and that, it having been shown by the evidence that the former received the latter in good condition and delivered it damaged without being able to account for the injury, there was a presumption of negligence on the part of the tug and that she must be held liable. 35 F. (2d) 1006. The Circuit Court of Appeals held the towage contract did not put the tow in bail to the tug and that the mere fact of injury created no presumption of negligence, and reversed the decree. 48 F. (2d) 557.

Petitioner maintains that the tug was bailee for hire and that, by proving the tug received the tow in good order and delivered it in a damaged condition, he made a prima facie case of negligence which cast upon such bailee the burden of showing the circumstances surrounding the damage. And he insists that, even if the presumption did not so arise, there was ample proof of negligence on the part of the owners of respondent.

The facts supported by the evidence, so far as they are material to these contentions, may be stated briefly as follows:

October 13, 1925, Roos, an employee of the Consolidated Shipbuilding Corporation, which had just completed the *Drifter,* made an agreement with Alexander Simpson for its towage from the builder's plant at Morris Heights in New York City to Port Newark alongside the steamer *Suscalanco* on which it was to be shipped. Later, Simpson told Roos that the *White City,* an excursion boat owned by Herbert Simpson and one Rhodes, would do the towing. Roos told Simpson that the boat should be at the plant at six o'clock in the morning. Her owners brought her about eight and were the only persons aboard at any time here involved. Employees of the builder as-

sisted in attaching the *Drifter*, then in good condition, to the *White City* by a forty foot rope. A cradle in which the former was to be stowed on the deck of the *Suscalanco* was attached by another rope about the same length to the stern of the *Drifter*. The builder put an employee, one Weston, on the *Drifter*, merely, as petitioner maintains, to tend lines when she was brought alongside the *Suscalanco*.

Respondent took the tow down the East River; the cradle became detached at Hell Gate; reattaching it caused delay of fifteen or twenty minutes, but no damage occurred to the *Drifter* at that time. Respondent continued down the river, across the Upper Bay, through Kill van Kull and into Newark Bay, where, about five o'clock in the afternoon, she sighted the *Suscalanco* going out to sea. Then the tug went to Fisher's Dock in Bayonne, and her owners having learned by telephone that the shipment could be made on a later steamer, remained there over night. The *Drifter* was tied alongside the pier with fenders to prevent injury. Weston, with the acquiescence of the owners of the tug, went home for the night but did not return. Simpson testified that on the morning following he went aboard the *Drifter* to steer her while she and the cradle were being towed to destination; that before leaving the dock he inspected her and that she was in the same condition as when received. When they arrived at Port Newark, about eight in the morning, the *Drifter's* hull planking was broken or damaged amidships on the starboard side just above the water line causing a dish-shaped depression about three-quarters of an inch deep, roughly circular and about twelve or fourteen inches in diameter. At the trial it was suggested by way of explanation that the hole might have been made by a piece of driftwood, of which there was much in the bay. But there was no evidence to show, and the trial court found that neither Rhodes nor Simp-

son could explain, when, how or where the damage happened.

Decisions of this Court show that under a towage contract the tug is not a bailee of the vessel in tow or its cargo. And it is established here and by numerous rulings of lower federal courts that evidence showing a tug's receipt of a tow in good order and delivery in damaged condition raises no presumption of negligence.

The supplying of power by a vessel, usually one propelled by steam, to tow or draw another is towage. Many vessels, such as barges and canal boats, have no power of their own and are built with a view to receiving their propelling force from other sources. And vessels having motive power often employ auxiliary power to assist them in moving about harbors and docks. Benedict on Admiralty, 5th ed., § 100.

The tug does not have exclusive control over the tow but only so far as is necessary to enable the tug and those in charge of her to fulfill the engagement. They do not have control such as belongs to common carriers and other bailees. They have no authority over the master or hands of the towed vessel beyond such as is required to govern the movement of the flotilla. In all other respects and for all other purposes the vessel in tow, its cargo and crew, remain under the authority of its master; and, in emergency the duty is upon him to determine what shall be done for the safety of his vessel and her cargo. In all such cases the right of decision belongs to the master of the tow and not to the master of the tug. A contract merely for towage does not require or contemplate such a delivery as is ordinarily deemed essential to bailment. *The Steamer Webb*, 14 Wall. 406, 414. *Transportation Line* v. *Hope*, 95 U. S. 297, 299. *The L. P. Dayton*, 120 U. S. 337, 351. *The Propeller Burlington*, 137 U. S. 386, 391. *The J. P. Donaldson*, 167 U. S. 599, 603, 604. *Alexander* v. *Greene*, 3 Hill 1, 19. *Wells* v. *Steam Navigation*

*Co.,* 2 Comstock 204, 208. Cf. *American Ry. Express Co.*
v. *American Trust Co.,* 47 F. (2d) 16, 18. *Bertig* v. *Nor-
man,* 101 Ark. 75, 81; 141 S. W. 201; *Sawyer* v. *Old Lowell
National Bank,* 230 Mass. 342, 346; 119 N. E. 825; *Blon-
dell* v. *Consol. Gas Co.,* 89 Md. 732, 746; 43 Atl. 817;
*Gilson* v. *Pennsylvania R. Co.,* 86 N. J. L. 446, 449; 92
Atl. 59. *Fletcher* v. *Ingram,* 46 Wis. 191, 202; 50 N. W.
424. The owner of the *Drifter* did not surrender to re-
spondent any right of control that does not pass in virtue
of a contract merely for towage. The fact that the man
put aboard by the builder did not remain to the end, or
that the owner did not choose to keep some one on the
tow, is immaterial.

Petitioner's claim against respondent is not for breach
of contract but one in tort. His allegations and proof
in respect of the agreement between the parties were made
by way of inducement to his real grievance, which was
the damage to the *Drifter* claimed to have been caused
by negligence of the respondent. It has long been settled
that suit by the owner of a tow against her tug to recover
for an injury to the tow caused by negligence on the part
of the tug is a suit *ex delicto* and not *ex contractu.* *The
Quickstep,* 9 Wall. 665, 670. *The Steamer Syracuse,* 12
Wall. 167, 171. *The J. P. Donaldson, supra,* 603. *The
John G. Stevens,* 170 U. S. 113, 125. *The Brooklyn,* Fed.
Cas. No. 1,938; 2 Ben. 547. *The Deer,* Fed. Cas. No.
3,737; 4 Ben. 352. *The Arturo,* 6 Fed. 308. In the case
last cited Judge Lowell said (p. 312): " These cases of
tow against tug are, in form and fact, very like collision
cases. The contract gives rise to duties very closely re-
sembling those which one vessel owes to others which it
may meet." In *The John G. Stevens, supra,* this court
cited *The Arturo,* approvingly and said (p. 126): " The es-
sential likeness between the ordinary case of a collision
between two ships, and the liability of a tug to her tow
for damages caused to the latter by a collision with a

third vessel, is exemplified by the familiar practice in admiralty . . . which allows the owner of a tow, injured by a collision caused by the conduct of her tug and of another vessel, to sue both in one libel, and to recover against either or both, according to the proof at the hearing." And the rule that the lien for damages occasioned by negligent towage takes precedence of liens for supplies previously furnished the offending vessel rests upon the ground that the claim, like those in case of collision, is one in tort arising out of duty imposed by law and independently of any contract or consideration for the towage. *The John G. Stevens, supra,* 126. *The Arturo, supra.*

While respondent was not an insurer or liable as a common carrier, it owed to the owner of the *Drifter* the duty to exercise such reasonable care and maritime skill as prudent navigators employ for the performance of similar service. The burden was upon petitioner to show that the loss for which he sought recovery was caused by a breach of that duty. The mere fact that the *Drifter* was in good order when received by respondent and in damaged condition when delivered does not raise any presumption of fault. As said by this court in *The L. P. Dayton, supra,* (p. 351): " To hold otherwise would require that in every case, as between the tow and its tug, the latter should be required affirmatively to establish its defence against the presumption of its negligence. . . . [p. 352.] Neither is it material that the facts of the case and the causes of the collision are peculiarly within the knowledge of the respondents. It is alleged in the present case, as one of the inconveniences of the libellant's situation, that it would be compelled, in order to establish the allegations of the libel, to resort to the testimony of those navigating the respective tugs, and thus call witnesses interested to exonerate the vessel to which they were attached. We are not aware, however, of any ground on which such an inconvenience can affect the rule of law which governs

the rights of the parties." See *The Steamer Webb, supra; Transportation Line* v. *Hope, supra*. The rule has been applied in numerous cases in the lower federal courts.[1] There is nothing about the injury itself to warrant any inference that it resulted from fault or negligence on the part of respondent.

There is no support for petitioner's contention that, without regard to the asserted presumption, the evidence shows that the injury to the *Drifter* was caused by negligence of respondent. The facts to which he refers are these: The tug arrived at the plant two hours late; respondent remained over night at Bayonne without authority and left the *Drifter* without a watchman; on the following morning, without effort to obtain the services of Weston or another, the tug proceeded to Port Newark. He calls attention to the absence of evidence further to show how the *Drifter* was moored at Bayonne and whether she was lighted during the night. On that basis he argues that it is possible that the injury occurred during the night; that the *Drifter* "might have been rammed by some other boat or if the lines were not slackened and the tide receded she might have been hanging on the side of the dock as the result whereof, a pile might have stove a hole in her side." The burden of proof as to respondent's negligence remained upon petitioner throughout the trial. His contentions clearly show that the evidence leaves the time, place and cause of the injury

[1] *Wilson* v. *Sibley* (S. D. Ala.) 36 Fed. 379. *The A. R. Robinson* (Wash.) 57 Fed. 667. *The W. H. Simpson* (C. C. A.) 80 Fed. 153. *Pedersen* v. *Spreckles* (C. C. A. 9) 87 Fed. 938, 944-5. *El Rio* (S. D. Ala.) 162 Fed. 567. *The Kunkle Bros.* (N. D. Ohio) 211 Fed. 540, 543. *The R. B. Little* (C. C. A. 2) 215 Fed. 87. *The Atlantic City* (C. C. A. 4) 241 Fed. 62, 64. *The Clarence L. Blakeslee* (C. C. A. 2) 243 Fed. 365. *Aldrich* v. *Pennsylvania R. Co.* (C. C. A. 2) 255 Fed. 330. *The Greenwich* (C. C, A. 2) 270 Fed. 42. *The W. H. Baldwin* (C. C. A. 2) 271 Fed. 411, 513. *The Ashwaubemie* (C. C. A. 4) 3 F. (2d) 782. *The Buttercup* (E. D. La.) 8 F. (2d) 281. *Southgate* v. *Eastern Transp. Co.* (C. C. A. 4) 21 F. (2d) 47, 49.

in the realm of conjecture. The evidence is consistent with an hypothesis that the tug was not negligent and with one that it was, and therefore has no tendency to establish either. *Gunning* v. *Cooley*, 281 U. S. 90, 94, and cases cited.

We find that respondent caused unnecessary parts of the record to be printed amounting in all to 186 pages. This is admitted in a statement filed by counsel for respondent. The cost of such printing will be charged to respondent. Rule 13, par. 9.

*Decree affirmed.*