# THE WILLOWPOOL.
## THE JULIA C. MORAN.
## THE WEST WAUNEKE.
### No. 366.

Circuit Court of Appeals, Second Circuit.
May 1, 1933.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellant Moran Towing & Transportation Co.

J. Harvey Turnure, of New York City, and Rawle & Henderson, of Philadelphia, Pa. (J. Harvey Turnure, of New York City, of counsel), for Pool Shipping Co., Ltd.

Barry, Wainwright, Thacher & Symmers, of New York City (John C. Crawley, of New York City, of counsel), for appellee Sudden & Christenson, Inc.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The steamship West Wauneke was in tow of the steam tug Julia C. Moran on the early morning of April 11, 1929, in the Delaware river, and when off Marcus Hook she collided with the steamer Willowpool, there anchored, and both vessels were damaged. The tug and tow were bound from Chester, Pa., to New York. The West Wauneke had a small crew on board who were steering by hand gear. The Moran safely passed the Willowpool, but the West Wauneke took a sudden sheer and collided with the Willowpool.

At the time there was a line attached to a bridle, the total length of which, between the Moran and the West Wauneke, was about 420 feet. The towed vessel was 426 feet in length, drawing about 10 feet forward and 12 feet aft, was light with no steam up, and the boatswain and two seamen were at the steering gear. The master was standing on the bridge about 150 feet from the steering gear up to the time the West Wauneke took the sheer. The men at the wheel could not see the tug's lights because of the superstructure of the steamship when the tug was dead ahead. The master gave orders to the boatswain by a small whistle under a code whereby one whistle meant to port the helm and two whistles to starboard the helm, and three to put it amidships. This code was incomplete and imperfect, because a signal of one whistle meant only that the wheel was to be ported, but it did not indicate the extent of the change, whether hard aport or slightly to port. The tide was ebbing, running about a mile and a half or two an hour, in the same direction the tow was proceeding. The court found that the wind was blowing about 35 miles an hour at the time directly astern of the tow. When the vessels approached Marcus Hook, the tug proceeded to starboard of an anchored vessel, but the West Wauneke took a sheer to port toward the Jersey shore of about 5 or 6 points. The master blew a signal of one whistle to the man at the wheel, which meant to port the helm, at the time he observed the steamship sheering, and, notwithstanding the sheer then taken, the boatswain put the wheel to port about 5 or 6 spokes, in pursuance to the signal given by the master, instead of putting it hard aport.

He kept the wheel in that position until the Willowpool was over 200 or 250 feet away, when he then put the wheel hard aport. The tug was pulling continuously to starboard, the sheer was not broken, and the master called his first officer, who was forward, to come to the bridge and went back to the wheel. The tug continued to pull over to starboard, and was unable to check the sheer until the collision occurred, striking the Willowpool on her starboard side.

As she was being towed, it was the duty of the West Wauneke to follow in the wake of the tug, and her failure resulted in the collision. There is no proof that the tug caused the sheer. A tug is not the insurer of the safety of a vessel in tow. An action against a towing tug is one in tort and not for breach of contract. Stevens v. The White City, 285 U. S. 195, 52 S. Ct. 347, 76 L. Ed. 699. The burden is upon the tow to prove the negligence of the tug. In the absence of such proof, a tow which collides with an anchored vessel is blameworthy. The Margaret, 94 U. S. 494, 24 L. Ed. 146; The Jacob Brandow (D. C.) 39 F. 831.

Apparently the tug made all possible efforts to avoid the sheer or to overcome it when it occurred. The finding below that the tug contributed to the sheer or brought it about, is not supported by the evidence. Fault may not be predicated upon the theory that, because the wind was blowing directly astern the tug at the rate of 35 miles an hour, the tow should have proceeded faster. If the wind had been abeam, it might have had some effect upon the steering of the West Wauneke, but a following wind could not have caused the sheer to port. Reference was made below to the light draft of the West Wauneke as one of the contributing factors to the sheer. The draft of the vessel could not have caused the sheer. The only effect that could have had was upon her quickness to respond to the efforts to steer. If the rudder was not entirely submerged, it would not have had as great an effect on the water as if fully immersed. But the evidence does not show how fully it was submerged. Nor did the length of the hawser on which she was towed contribute to the collision. A boat in tow with a long hawser will steer more readily than one on a short hawser because, if sufficiently long, its bight will lie in the water and the partially immersed hawser itself aids to keep the vessel in line.

There was no reasonable theory upon which fault might be charged to the appellant. The burden was upon the appellee to show some fault in towing, and in this it failed. It was the steering of the steamship, in charge of its boatswain, which was the immediate cause, as the evidence establishes.

Decree reversed.