## JACOB RICE & SONS v. THE MARION A. C. MESECK.

## THE GEORGE R.

### No. A. 16845.

District Court, E. D. New York.

Jan. 12, 1944.

Hagen & Eidenbach, of New York City (Nelson J. Johnson, of New York City, of counsel), for libellant.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for claimant.

GALSTON, District Judge.

Some time prior to January 20, 1943, the libellant had chartered its scow George R to the McAllister Lighterage Line, Inc. The charterer caused the scow to be loaded with a cargo of copper and then towed to Pier 97, North River, at which point it arrived on January 18, 1943. Under the orders and control of the harbor master, or the stevedore boss, it was shifted from place to place at that pier.

On the morning of January 20, 1943, the scow, having discharged part of a cargo and drawing about four feet of water, was lying on the north side of the pier. The harbor master directed the Marion A. C. Meseck, a tug employed at the pier as a shifting tug, to shift the barge to the south side of the pier at a point designated by the stevedore boss. The tug took the barge in tow on two short stern lines, rounded the pier and entered the slip on the south side of the pier. Hargens, captain of the scow, was on board the scow, as was also the harbor master. Then the lines from the tug to the scow were cast off and the Meseck moved a light Petrie scow from the berth which the George R was to occupy nearer the bulkhead. The Meseck then made fast to the starboard side of the George R to work the stern to the pier. During this maneuver the harbor master remained on the scow, and the boss stevedore of Pier 97 was stationed on the pier abreast of the scow, and all directions in respect to the mooring of the vessel were given to the master of the tug by either or both of these men. It was in carrying out this maneuver that the scow was damaged on its port side aft. The scow filled with

water and it was necessary to use the tug's syphon to prevent the scow from sinking.

The libellant contends that the hole in the planking was caused by the ramming of the port side against a block of ice in the slip, and ascribes the fault to the action of the tug in driving the scow against the ice.

The issue in this cause must be determined solely on the question of whether the tug was negligent. As Judge Hough said in The Golden Rule, 1925 A. M. C. 297: "There was no contractual relation between the tug and scow, no contract of towage. It was of course obligatory on the tug to do the work in a seamanlike manner, but she was not chargeable as is a vessel contracting for towage, in respect of propriety in starting out, and safety at the point of mooring and leaving. That responsibility lies on the Associated Company; the tug was that company's servant to do a definite thing which was performed properly. There the tug's duty and liability ended." Affirmed 2 Cir., 278 F. 1021.

So in this cause any asserted liability must rest in negligence, for the Meseck was under no towage or other contract with the scow. Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699; Monk v. Cornell Steamboat Co., 2 Cir., 198 F. 472; The Bear, D.C., 11 F.2d 607, affirmed Clark v. The Bear, 2 Cir., 11 F.2d 608.

From these authorities and because the Meseck was under no contract with the scow but only with those who operated and controlled the loading and unloading of cargoes at the pier and the movement of the shifting tug, the only obligation of the Marion Meseck was to carry out without negligence, it is true, the orders of those in control of those operations. On the proof it appears that all the tug did was to carry out the orders of the harbor master or stevedore boss. They were acting not as agents of the tug but on behalf of the charterers of the scow. If the scow has any claim it would seem to be against the charterers. It may very well be that the harbor master or stevedore boss, or both, were negligent in failing to advise the master of the tug of the presence of heavy cakes of ice on the south side of the pier, but their negligence, if any, cannot be attributed to the tug. The case of the scow against the tug must, therefore, fail for lack of proof that the tug was negligent.

Nor in the circumstances, even though this action be in rem, was the bur-den on the claimant to implead a third party under the 56th Rule in Admiralty, 28 U.S.C.A. following section 723.

The libel will be dismissed. Concurrently with this opinion appropriate findings of fact and conclusions of law will be filed.