## THE MACK.

### No. 11428.

Circuit Court of Appeals, Fifth Circuit.

April 12, 1946.

Martin H. Long, of Jacksonville, Fla., and John M. Allison, of Tampa, Fla., for appellants.

Cody Fowler, of Tampa, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Two of the Tampa Electric Company's barges[1] were damaged while the Hendry Corporation undertook their towage with its tug Mack from Port Tampa, Florida, to the city of Tampa, Florida. The Continental Insurance Company, insurer of the barges, paid to the Tampa Electric Company the sum of $3,567.70 for the damages sustained. As subrogee of the assured, the insurance company filed a libel in rem against the tug Mack and in personam against the Hendry Corporation for recovery of the sum paid. The insurance company alleges that the negligence of those in charge of the tug caused the damage. The answer, after denying the negli-

---

[1] The cargo of fuel oil was not damaged.

gence charged, affirmatively set out that the tug was in charge of an experienced and competent crew; that there was no negligence or bad seamanship in handling the tow; that those in charge of the tug exercised reasonable and ordinary care for the safekeeping of the tow; and that the weather conditions caused the damages. The court below found that the negligent handling of the tug caused the damages and gave judgment for the amount claimed. The tug Mack and her owner appealed.

■ An appeal in admiralty is in substance a trial de novo, so this court is free to make its own determination of the facts.[2] Having reviewed the record, we find, as did the trial judge, that the libelant failed to sustain six of the seven grounds of negligence charged in its libel but did sustain the seventh ground. That ground was that the tug and those in charge were at fault "in negligently managing and operating said tug 'Mack' so as to permit its propeller to be fouled and thereby making it impossible to aid and assist the tow."

■ The facts briefly are as follows: The Hendry Corporation entered into an agreement with the Tampa Electric Company to tow two barges loaded with fuel oil from the docks of the Tampa Electric Company at Port Tampa to its plant at Tampa, Florida, and to return the empty barges to Port Tampa.[3] On June 27, 1943, the tug "Mack" took in tow the two barges loaded with fuel oil at Port Tampa, and at 2 p. m. on that date began the voyage to Tampa, Florida. The two barges were towed a short distance apart, one behind the other. At the front end of the forward barge were two wire cables about one inch in diameter; one was affixed to the right side of the barge and the other to the left side; and the two, being brought together in front of the barge and fastened with a shackle, made a triangle which was called the bridle. The towline from the tug was attached to the shackle of this bridle.

The tug and the tow proceeded without difficulty until they reached Gadsden Point,[4] the roughest spot in the bay in bad weather. As the tow rounded Gadsden Point it encountered high waves, with the wind at its stern. About thirty minutes later the towline broke approximately half-way between the tug and the barges. The crew immediately pulled the part of the towline affixed to the tug aboard her, and the tug circled around and drew up along side the barges for the purpose of permitting the mate and a deckhand to board the forward barge in order to connet it anew to the tug with another towline. The mate jumped aboard the barge, but the deckhand refused to jump. The tug crew then threw a small line attached to the new towline to the mate on the barge, but without help he was not able to pull the towline all the way to the barge. In an effort to transfer the deckhand to the barge to assist the mate the captain ordered the tug to backwater toward the barges. The backward motion of the tug and the drift of the barges with the wind toward the tug caused the bridle and the new towline lying in the water between the vessels to foul the tug's propeller. The consequential disablement of the tug permitted the barges to drift ashore and to ground. As they drifted shoreward in the rough sea, the barges collided repeatedly, and these collisions caused the damages sued for.

■ Upon the question of the duty and liability of a tug and its owner under a towage contract, the Supreme Court in The Margaret, 94 U.S. 494, 496, 24 L.Ed. 146, said: "The tug was not a common carrier, and the law of that relation has no application here. She was not an insurer. The highest possible degree of skill and care were not required of her. She was bound to bring to the performance of the duty she assumed reasonable skill and care, and to exercise them in everything relating to the work until it was accomplished. The want of either in such cases is a gross fault, and the offender is liable to the extent of the full measure of the consequences. * * *" See also Stevens v.

[2] Coryell v. Phipps, 5 Cir., 1942, 128 F. 2d 702; The Portaritisa, 5 Cir., 1942, 131 F.2d 362; The Friendship II, 5 Cir., 1943, 135 F.2d 520.

[3] The contract by its terms covers a period beginning January 12, 1943, and ending January 1, 1944. Since the Hendry Corporation admits in its answer the execution of the contract, it cannot now argue that the terms of a previous contract between the parties governed the liability for the damages.

[4] The channel from the Gulf of Mexico and the channel from Port Tampa merge at Gadsden Point. It is also a meeting place for the tides.

White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699; and The Lapwing, 5 Cir., 150 F.2d 214.

For the insurance company as subrogee of the owner of the barges to recover for the damages, it must prove that the negligence of the owner of the tug or of its crew caused the damages. This we think it has done. The undisputed evidence leads to the conclusion that the master's bad seamanship in backwatering the tug was negligence on his part and the proximate cause of the damages. The court below correctly summarized the situation in these words: "* * * one does not have to be an expert to realize the danger of backing a tug into a tow under such circumstances, with a hawser floating loose in the water in front of the tow. The testimony of all the witnesses is in agreement that it was the fouling of the propeller with the hawser, which completely disabled the tug, and made it impossible for the tug to render assistance to the tow, that caused the stranding of the barges and the consequential damages to them. * * *"

We find no merit in the contention that the damages allowed were excessive. The evidence justified the award.

The judgment appealed from is affirmed.