This suit was brought by the Department of Highways to recover from the defendant, Whiteman Brothers, Inc., the sum of $1572.50, which the Department of Highways claims was the damage caused by the breaking of a submarine cable across the north draw of the Pontchartrain Bridge. It is alleged that the defendant was operating a tug through the channel of this bridge on May 7, 1943, which tug was towing a dredge and several barges; that while navigating said tug with its tow attached, the spuds on the dredge were let down or dropped and caught the said cable, damaging it to such an extent that it will have to be replaced at a cost estimated in the amount claimed in this suit.
The defendant company admits that it owned the tugboat mentioned in the petition and that its agents and employees were navigating said tugboat through the north draw of the Pontchartrain Bridge; that said tugboat was towing a dredge named "Cartagena" owned by the United States government and operated by the War Department through the Army Engineers. It is alleged that the dredge was manned by a crew who were employees of the United States government and over whose actions the defendant had no control and for whose acts it was not responsible; that the said dredge was being towed with spuds up and when the tugboat operated by defendant's employees undertook to tow the dredge through the north draw of said bridge, if the crew of the government dredge dropped a spud or spuds and caused the damage as claimed, such act on the part of the employees of the government was not under the control of the defendant, and the damage to the cable was not caused by any negligence of defendant's employees in operating the tugboat which was towing the dredge.
On the day the case was tried, George W. Whiteman, liquidator of Whiteman Brothers, Inc., was made a party defendant. The trial resulted in a judgment in favor of defendant, Whiteman Brothers, Inc., dismissing plaintiff's suit. The plaintiff appealed, and defendants, Whiteman Brothers, Inc., and George W. Whiteman, Liquidator, answered the appeal and asked that the judgment be amended so that the judgment will also be in favor of the liquidator.
The evidence shows that the tug which was towing the dredge had about passed *Page 401 
through the span of the draw when the spuds on the dredge were let down or dropped into the water, these spuds catching the submarine cable lying on the bottom of the lake and damaging it to such an extent that it will have to be replaced at an estimated cost of the amount claimed in the suit. These spuds on the dredge are poles or beams some 75 feet in length and have steel points on the ends. These spuds are let down by a mechanical device and penetrate the bottom of the water so as to hold the dredge in place when it is in a stationary position. The submarine cable was laid on the bottom of the lake across the channel of the draw and furnished electric current for operating the draw bridge and electric current for other purposes at that point.
There was a sign placed on the piers of the bridge at the entrance to the channel through the draw giving notice to boats passing through the span of the presence of the submarine cable and giving warning not to anchor or dredge. As the evidence clearly shows that the cable was broken by reason of the dropping of one or more of these spuds on the dredge into the bottom of the lake in the face of this warning, there can be no serious question as to the negligence of the person or persons who dropped these spuds or permitted them to be dropped. The serious question is whether or not the defendant in this case is responsible for this act of negligence.
The evidence shows that the dredge was manned by a full crew under Captain Bernstein, and this crew was in the employment of the Army Engineers; that the operators of defendant's tug which was towing this dredge had no control over the crew on the government dredge, and no one of defendant's crew on the tug had anything to do with letting down the spud or spuds on the dredge. It is also shown that these spuds are not supposed to be let down while the dredge is being towed, and the operator of defendant's tug did not know that the spud or spuds had been dropped until after the accident; that no one on the dredge had the right to let down the spuds without orders from the captain of the tug.
Counsel for the plaintiff rely principally on the doctrine of res ipsa loquitur in their effort to fasten liability on the defendant. It is contended that the cause of the accident is more within the knowledge of the defendant than the plaintiff and the accident was of such a nature that it would not have occurred if due care had been exercised. Learned counsel concede that the evidence in this case shows that the dredge which caused the damage was not under the control and management of the defendant's agents and employees, but the defendant is sought to be brought under the res ipsa loquitur doctrine because of the fact that it should know the cause of the accident and is required to show what caused it.
We do not consider it necessary to go into a detailed discussion of the point raised by counsel as to whether or not it is one of the essentials for applying the doctrine of res ipsa loquitur that it be shown that the thing which caused the damage was under the control and management of the defendant. We do observe, however, that the principal reason for the doctrine is because of the fact that where an injury arises from the defect in a thing, or its improper use and operation, when the thing is under the control and management of the defendant, the defendant is in a better position to know the cause of the injury than the person injured. In other words, the reason he is in a better position to know the cause of the injury is because of the fact that he has the control and management of the thing which caused the injury.
[1] Conceding that the defendant was in a better position than plaintiff to know the cause of the accident, the defendant has shown whose negligence caused the accident, viz., the negligence of the crew of the government dredge, and has also shown that the operators of its tug were not responsible for the act which caused the damage. Where the evidence shows that the accident was caused by the negligence of some third party for whose acts the defendant is not responsible, the res ipsa loquitur doctrine cannot be applied against such a defendant to require him to assist the plaintiff in fixing responsibility on the other party. Gershner v. Gulf Refining *Page 402 
Company, La. App., 171 So. 399; Cavaretta v. Universal Film Exchanges, Inc., et al., La. App., 182 So. 135.
[2, 3] There was no joint responsibility on the part of the crew of defendant's tug and the crew of the government's dredge with reference to the act of letting down the spuds on the dredge. The crew of the tug did not have exclusive control over the dredge which it was towing. Where a flotilla of vessels is being towed by a tug and the tug and the tow are under separate crews, the crew of the tug only has control over the movements of the entire flotilla to the extent of carrying out the independent contract of towage. The master and crew of the tow retain control over the tow in all other respects and determine what acts are to be done for the safety and direction of the tow in cases of emergency. 48 Am.Jur., p. 338, Section 492, verbo "Shipping"; Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699.
[4] There is an intimation in the brief of counsel for plaintiff that it is probable that the spuds on the dredge were lowered under the orders of Captain Bernstein to prevent the dredge from colliding with the fender of the bridge, indicating that the tug had towed the dredge too close to the side of the span. We do not find any evidence in the record to justify this theory. Plaintiff's witness Spiehler who saw the accident did testify that the dredge was against the highway fender, but he testified that the tug and dredge hit the fender after the cable was caught in the spuds on the dredge. It is just as reasonable to say that the pulling of the cable drew the dredge against the fender. On being asked the question whether or not either the dredge or the tug struck the fender before the spud was dropped, the above named witness replied: "Not that I could see."
[5] We are asked to remand the case if we find that the defendant is not liable under the res ipsa loquitur doctrine in order to give plaintiff an opportunity to locate and take the testimony of Captain Bernstein. This suit was filed November 3, 1943, and was not tried until December, 1945, and we see no good purpose to be served in remanding the case.
[6] However, the Department of Highways, a state agency, cannot be condemned to pay the costs of the suit, other than the stenographer's costs for taking the testimony. Act 135 of 1936; Makofsky v. Department of Highways, 205 La. 1029,18 So.2d 605.
Evidently through inadvertence, the judgment did not mention the name of the liquidator in dismissing the suit. The judgment will be amended to correct the omission.
For the reasons assigned, it is ordered that the judgment appealed from be amended so as to include the name of George W. Whiteman, Liquidator of Whiteman Brothers, Inc., as a defendant in whose favor the judgment of dismissal shall operate also; that said judgment be further amended so as relieve the plaintiff from the payment of any costs other than the stenographer's costs for taking the testimony, and as thus amended, the judgment is affirmed.