Counsel will submit an appropriate order.

**TEXAS COMPANY, as owner of THE Barge TEXACO 379, Libelant,**

v.

**THE Tug MARGARET A. MORAN and Moran Towing & Transportation Co., Inc., Respondents,**
and
**Conners-Standard Marine Corporation, Respondent-Impleaded.**

United States District Court
S. D. New York.

May 12, 1959.

---

nah's mother testified that "Hannah was with General Hazen ever since she was three years old." This would mean that Hannah was at least twenty-nine years of age in 1895.

Pyne, Brush, Smith & Michelsen, New York City, for libelant.

Burlingham, Hupper & Kennedy, New York City, for respondents.

Purdy, Lamb & Catoggio, New York City, for respondent-impleaded.

THOMAS F. MURPHY, District Judge.

These are consolidated libels involving damage to one barge on two different occasions while making voyages west through the New York State Barge Canal. On both occasions the barge was being pushed by the Tug Margaret A. Moran.

On the first occasion, April 13, 1952, the barge was caused to strike the south wall of Lock No. 11 on its port side while entering such lock at Amsterdam. It was damaged in the way of port No. 2 tank. On the other occasion near Rotterdam Junction, New York, on July 6, 1952, it was caused to be grounded just west of Lock No. 9. Superficial inspection disclosed that the forward peak had dented bottom plates but since it had a full cargo of gasoline further inspection was impossible. No evidence was offered by either of the respondents.

We find on all the credible evidence that the damage on both occasions was caused by the negligent operation and navigation of the Tug Margaret A. Moran.

The real problem presented relates to the defense of laches. It is undisputed that the libels were filed three months and six months, respectively, after the three-year New York statute of limitations [1] had run.

Query: Is the equitable defense of laches under the facts in this case a complete defense? We are told that we may look to the New York statute as a rule of thumb which, having run, raises a presumption of prejudice to respondents unless circumstances otherwise indicate.

Libelant suggests that we need not concern ourselves with the question of laches since the libel seeks redress for breach of a towage contract and the applicable New York statute of six years, Civil Practice Act, § 48, makes the question of laches moot.

While it is true that there is language in Blessington v. McCrory Stores Corporation, 305 N.Y. 140, 111 N.E.2d 421, 37 A.L.R.2d 698, and McWilliams Blue Line, Inc. v. Esso Standard Oil Co., 2 Cir., 1957, 245 F.2d 84 and in other decisional law to the effect that damages can be recovered for breach of an implied warranty of workmanlike performance and thus make applicable the six-year statute of limitations, we are constrained to follow Stevens v. The White City, 285 U.S. 195, 201, 52 S.Ct. 347, 76 L.Ed. 699, holding that a suit for damages caused by a tug to its tow is *ex delicto*, not *ex contractu*. The New York Court of Appeals reiterated such distinction when it said, " * * * where the wrong complained of is in truth negligence, and nothing else, the negligence suit time limitation cannot be escaped, and the contract limitation used,

---

1. New York C.P.A. § 49, subd. 6.

by means of allegation and proof of a contractual relationship * * *. The particular reasoning of those cases applies only to instances where the alleged breach of contract is failure to use due care—in other words, negligence. Since the common-law duty and the implied contractual obligation, in such situations, are one and the same, the suit, however labeled, is one in negligence, at least for time limitation purposes." Blessington v. McCrory Stores Corporation, supra, 305 N.Y. at pages 147, 148, 111 N.E.2d at page 423.

■ The contract between libelant and Moran was oral and informal. When a Texaco barge was to be towed Texaco would telephone Moran and a Moran employee would orally order a tug to do the job. Whether Moran is guilty of a breach of its oral contract to safely tow libelant's barge or liable in tort for negligently towing has a relation to the argument by respondents that libelant was under a duty to plead facts and circumstances tending to excuse it from laches. Quite obviously the draftsman of the libel realized that if the libel was framed in tort it would be met with the defense of laches, and sought to avoid this defense by pleading a claim *ex contractu.* This perhaps is the reason that no facts or circumstances are alleged which would tend to show that the respondents were not prejudiced by the delay. In any event, despite the argument of the impleaded respondent, we hold that it was not required under the Admiralty Rules to plead the facts and circumstances in some sort of responsive pleading to the defense of laches, because there is no authority in the rules for such a plea.

■ While it is true that where a libel shows on its face that the statute has already run it is incumbent on the libelant to plead and prove facts negativing laches or tolling the statute, Redman v. United States, 2 Cir., 1949, 176 F.2d 713, the respondents could have precipitated this by filing exceptions and the libelant would have been granted leave to amend. Cf. Hughes v. Roosevelt, 2 Cir., 1939, 107 F.2d 901.

■■ It is unnecessary to consider this problem of pleading any further since libelant in its brief after trial asks that if the court finds that the action is one in tort to amend its pleadings to conform to the proof and include therein the proof that it offered tending to show that the respondents were not prejudiced by the late filing, viz, the correspondence passing between the insurance brokers and Moran with copies to the respondent-impleaded. Such motion is granted. This evidence certainly indicates pertinent knowledge of the facts by both respondents in a matter of four or five weeks after both events. Why libelant continued amicably to "adjust these claims" over so long a period without even the courtesy of a reply from Conners remains a mystery, except perhaps admiralty courts are supposed to know that admiralty matters move more leisurely than others. The question is however whether or no the respondents were prejudiced by the late filing and we hold under all the circumstances that they were not and the defenses of laches are dismissed.

The remaining question is one of liability and liability-over.

No process was ever issued against the tug and no claim of owner has been filed. From the pleadings and the briefs it is evident that Conners-Standard Marine Corporation, the respondent-impleaded, was the owner and operator of the tug, which was under time charter to Moran Towing and Transportation Co., Inc. Conners provided the tug, officers and crew, paid for and supplied all wages, provisions, etc. The master and crew remained the servants of the owner, subject of course to orders from the charterer as to the employment of the tug. Conners, also pursuant to the charter, agreed to bear all claims and be liable to the extent of its legal liability in connection with or growing out of the services rendered, together with liability to parties and persons growing out of or connected with the services rendered.

Since Moran was the contracting party to perform the services of towing the Texaco barge and in the performance thereof the tow was damaged on two occasions because of the negligence of the tug, Moran is liable to libelant and there should be a decree against it, but in turn Moran is entitled to a decree over against Conners since Conners was in complete control and was the active tortfeasor.

Accordingly, libelant must have a decree against Moran with a decree over against Conners.