433 F.Supp. 53 (1977)
UNITED STATES of America, Plaintiff,
v.
FEDERAL BARGE LINES, INC., and Dundee Cement Company, in personam and M/V TOM TALBERT, her engines, tackle, appurtenances, etc., et al., in rem, Defendants.
No. 75-720A (3).
United States District Court, E. D. Missouri, E. D.
May 3, 1977.
*54 Barry A. Short, U.S. Atty., Jean C. Hamilton, Asst. U.S. Atty., St. Louis, Mo., for plaintiff.
Elmer Price, Goldstein & Price, St. Louis, Mo., for defendant Federal Barge Lines, Inc. and M/V Tom Talbert.
Fritz G. Faerber, Lucas & Murphy, St. Louis, Mo., Lucian Y. Ray, Ray, Robinson, Keenen & Harrinen, Cleveland, Ohio, for defendant Dundee Cement Co.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
WANGELIN, District Judge.

PRELIMINARY STATEMENT
The parties to this action agreed and stipulated that in considering the respective motions of the Defendants to dismiss the government's Complaint, the Court might read and consider as evidence the deposition testimony of Captain L. B. Powell, who was the pilot on watch of the M/V TOM TALBERT at the time of the incident complained of, which deposition was on file with the Court and in accordance with Captain Powell's deposition and the evidence adduced in the Plaintiff's case, the Court finds the following:

FINDINGS OF FACT
1. The United States of America (United States) is a sovereign nation.
2. Federal Barge Lines, Inc. (Federal) is a corporation and at all times pertinent hereto was the owner and operator of the M/V TOM TALBERT.
3. Dundee Cement Company (Dundee) is a corporation and at all times pertinent hereto was the owner of a barge known and numbered as DDC-12.
4. The M/V TOM TALBERT is a diesel towboat with dimensions of 155.5 feet registered length, 168 feet in overall length, 40 feet in registered breadth and a gross tonnage of 635 tons. It is powered by two diesel engines rated at 2800 horsepower each, for a total of 5600 horsepower, and has a full complement of four flanking rudders and two steering rudders.
5. Barge DDC-12 is a steel barge built in 1967 with registered length of 195.1 feet, registered width of 35.1 feet, and a registered depth of 10.8 feet, and a gross tonnage of 900 tons.
6. Lock & Dam # 22 is located at Mile 301.2, Upper Mississippi River near Saverton, Missouri, and is operated by the United States Army Corps of Engineers. The lock chamber is 110 feet wide and 600 feet long. The adjoining dam consists of 13 gates; the first three gates adjacent to the lock are tainter gates, the next three are roller gates, and the remaining seven gates are tainter gates. All gates serve the same purpose of regulating pool levels and flow of the river. The lock and dam were built *55 on the Missouri side of the river for the purpose of navigation and not flood control.
7. Pursuant to the contract of towage between Federal and Dundee, the M/V TOM TALBERT picked up Barge DDC-12 along with three other Dundee barges at Mile 274, Upper Mississippi River, near Clarksville, Missouri on August 15, 1972 and departed upbound. At that time and at all times pertinent to this action, the M/V TOM TALBERT had a tow of 15 barges, which were arranged three wide and five long. DDC-12 was the lead barge on the starboard string and carried a load of 1451 tons more or less of powder cement.
8. The vessel and its tow arrived at Lock 22 at approximately 11:30 p. m. that same day, August 15, 1972. It waited for another vessel ahead of it to be locked through the chamber, then entered the chamber at 12:10 a. m. on August 16, 1972 and departed the lock at 1:30 a. m.
9. The pilot on watch was Captain L. B. Powell, who had been working on the inland rivers since 1935. Captain Powell was a licensed master and first class pilot for the stretch of the river involved in this matter and had received his first license in 1951. He had traveled this part of the river and had navigated the lock in both directions before on many occasions and had handled other boats similar to the M/V TOM TALBERT prior to this time.
10. After the tow was locked through, the M/V TOM TALBERT proceeded upstream slowly at about one to one and a half miles per hour. The weather was cloudy with little wind. The current was fast since all the gates on the dam were open. The channel above Lock 22 where the casualty occurred was a buoyed channel. There was shallow water above Lock & Dam 22. The tow of the TOM TALBERT was approximately 96 feet wide at the head and 975 feet long. Captain Powell was navigating the tow in the buoyed channel. He was proceeding cautiously in view of the shallow water. As the tow came to a point about one-half mile above the lock, the DDC-12 grounded on an unknown obstruction in the channel, which was not marked by any buoy or other navigational aid. When the DDC-12 grounded, the wires on the DDC-12 holding it in tow broke and the barge topped out around the red buoy and began drifting back towards the lock. As soon as the barge broke out of tow, Captain Powell immediately killed his headway and began to back in an effort to retrieve the barge before it drifted back onto the dam.
11. The Court finds that despite all reasonable efforts made by Captain Powell and the crew of the TOM TALBERT to catch the drifting Barge DDC-12, such efforts were unsuccessful and the DDC-12 came down to the dam and lodged between gates 4 and 5 on the icebreakers which the government's witness estimated were fifteen to twenty feet upstream of the dam.
12. The stretch of river for about three miles above Lock 22 was very shallow, has a sand bottom and is prone to having sandbars or "lumps" caused by sand shifting when subjected to ordinary currents or towboat wheelwash. Such sandbars and "lumps" can be caused to appear and disappear very quickly within a matter of hours or less.
13. The barge sank at 2:30 p. m. on that date in an upright position in an estimated 25-30 feet of water and rested on the rock bottom on which the dam was built and against the icebreakers.
14. At no time from the sinking of the barge on August 16, 1972 through and including the final removal in the summer of 1976 did the Lock or Dam # 22 suffer any physical damage because of the presence of the barge. The Lock and Dam remained in continuous operation and there was no cessation of navigation at any time.
15. The Court finds from all the evidence including Captain Powell's deposition that the grounding of the DDC-12 approximately one-half mile above the lock chamber occurred when the M/V TOM TALBERT and its tow were well within the marked channel and that the TOM TALBERT and its crew exercised reasonable care and that degree of maritime skill that *56 prudent navigators employ in similar services in navigating the tow and in their attempts to recapture the Barge DDC-12.
16. The Court further finds that the grounding of the DDC-12 and the subsequent casualty was due to an unknown obstruction in the channel, which obstruction was not marked by any buoy or other navigational aid.
17. The Court further finds that the grounding and sinking of Barge DDC-12 and the subsequent damage thereto and necessary cost of removal were not due to any negligence on the part of Defendant Federal or its agents or to any unseaworthiness of any of Federal's vessels and appurtenances and Federal and the M/V TOM TALBERT are free from fault in connection with this casualty.
18. The DDC-12 during the times herein was unmanned. At the time of her delivery to the M/V TOM TALBERT's tow and until the accident which resulted in her sinking, she was in a seaworthy condition.
19. Shortly after the sinking of the DDC-12, Dundee entered into a verbal contract for the removal of the barge and cargo with the Valley Line Supply & Equipment Company. A combination of high water and the approach of winter prevented anything effective being done at that time. On January 15, 1973, after the ice broke up, the water was still too high for anything to be accomplished and Valley moved its equipment to another job. On July 16, 1973, Valley began the work of removal. On August 21, 1973 during the process of removal by Valley the barge with its cargo which had now hardened into concrete, rolled over on its starboard side. On August 24, 1973, Valley stopped its unsuccessful operations and left the site. On August 29, 1973, a tender of abandonment to the Corps of Engineers was made by Dundee. The tender was rejected.
20. After the tender of abandonment was rejected, the United States issued an invitation for bids on February 25, 1974. Valley Line was the lowest bidder in the amount of $335,000 and was awarded the removal contract on August 7, 1974. On June 16, 1976 removal was completed and on June 21, 1976 Valley Line received final payment from the United States. The government's total damages, as proven, consist of $335,000 paid to Valley Line and $6,773 in-house expenses, totaling $341,773.00.
21. Both the DDC-12 and her owner, Dundee Cement Company are free from fault in connection with this casualty.

CONCLUSIONS OF LAW
1. This Court has jurisdiction of the parties and the subject matter of this suit pursuant to 28 U.S.C. § 1333.
2. Federal Barge Lines, Inc., as the owner and operator of the towing vessel, the M/V TOM TALBERT, can be liable to the government only in the event that it was negligent in its navigation. Wyandotte Transportation Company et al. v. United States, 389 U.S. 191, 88 S.Ct. 379, 383, 19 L.Ed.2d 407 (1967).
3. Similarly, under the provisions of 33 U.S.C. § 409, Federal can be liable for damages only in the event that it was negligent in its navigation. Section 409 contains the basic language of "voluntarily and carelessly" and the section has been interpreted to sound in negligence. In the Matter of Marine Leasing Services, Inc. et al. etcetera, 328 F.Supp. 589 (D.C.E.D.La.1971) aff'd 471 F.2d 255 (5th Cir. 1973). Wyandotte Transportation Company et al. v. United States, supra.
4. The Court has found that at the time of the grounding, the M/V TOM TALBERT and its tow were in the marked channel and the casualty resulted from a grounding upon an unmarked and unknown obstruction in the channel. The towboat was under a duty only to exercise such reasonable care and maritime skill that prudent navigators employ in performing similar services. The burden of proving negligence is on the party that asserts it. Stevens v. The White City, 285 U.S. 195, 202, 52 S.Ct. 347, 76 L.Ed. 699 (1932); Hart v. Blakemore, 410 F.2d 218 (5th Cir. 1969).
*57 5. The position of the grounded vessel at the time of grounding is of paramount importance. If the vessel is inside the channel and strikes an unknown and unmarked obstruction it is settled that the vessel is not negligent as a matter of law. Under the evidence including Captain Powell's deposition, the Court has found that the M/V TOM TALBERT and its tow were in the channel and did not hit a known obstruction in the channel. The burden of proof to show negligence remained on the United States, Plaintiff. The Court finds that the Plaintiff has failed to sustain this burden and in any event, the Court has found that the grounding occurred in the channel and upon an unknown, unmarked obstruction. Accordingly, Federal and the M/V TOM TALBERT are not negligent as a matter of law. Mid-America Transportation Co. v. National Marine Service, Inc., 497 F.2d 776 (8th Cir. 1974) subsequent appeal 526 F.2d 629 (8th Cir. 1975); certiorari denied 425 U.S. 937, 96 S.Ct. 1671, 48 L.Ed.2d 179 (1976); Dairyland Power Cooperative v. Federal Barge Lines, Inc. et al. 414 F.Supp. 40 (D.C.E.D. Mo.E.D.1976), aff'd without opinion 553 F.2d 102 (8th Cir. 1977).
6. United States has also sought to hold Federal, The M/V TOM TALBERT and Dundee under the provisions of 33 U.S.C. § 408. Sec. 408 as written and construed does not apply to the factual situation before this Court. A fair reading of that statute would indicate that the government is seeking to stretch the terms thereof out of any logical shape or framework in an effort to keep Federal, the M/V TOM TALBERT and Dundee as possible sources of recovery for removal costs. The government has not sought damages for injury to Dam 22; it cannot, in fact, seek such damages since the structure was not damaged and the lock and dam remained in continuous operation with no cessation of navigation. The government is seeking the costs of wreck removal and properly must proceed under 33 U.S.C. § 409 (Sec. 15 of the Rivers and Harbors Act of 1899). Wyandotte Transportation Co. et al. v. United States, supra.
7. The provisions of 33 U.S.C. § 403 are clearly not applicable to the factual situation before the Court, particularly in view of this Court's findings of fact that none of the Defendants were guilty of negligence, nor were their respective vessels unseaworthy in any respect. The cause is one of wreck removal, the costs for recovery of which must properly be considered under, and is controlled by, the provisions of 33 U.S.C. § 409. Wyandotte, supra.
8. Dundee Cement Company, as the innocent, non-negligent owner of the DDC-12 had the right to, under the provisions of 33 U.S.C., Section 409, abandon the wreck of the barge to the United States and is not liable for the expense of removal. See: Wyandotte Transportation Company et al. supra; U. S. v. Moran Towing and Trans. Co., 409 F.2d 961 (4th Cir. 1969). In re Marine Leasing, supra.
With the facts indicating that the defendants were not negligent and their respective vessels were seaworthy, judgment must be entered in favor of all defendants and each of them on their Motions for Dismissal.