UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

01-31055
SUMMARY CALENDAR
_____

ZURICH INSURANCE COMPANY; MARINE OFFICE OF AMERICA
CORPORATION,

Plaintiffs - Appellants

v.

CROSBY TUGS, L.L.C.,

Defendant - Appellee.

_____

Appeal from the United States District Court for the
Eastern District of Louisiana
(99-CV-2748-D)
_____

August 8, 2002

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:[1]


Plaintiffs Zurich Insurance Company and Marine Office of America Corporation (Zurich)

filed a claim against Crosby Tugs, L.L.C. (Crosby) to recover damages to a partially completed

supply vessel known as Hull 180. The damages occurred while Crosby was towing Hull 180 from

Fourchon to Houma, Louisiana. Zurich paid the owners of Hull 180 under a builder's risk

_____

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

-1-

insurance policy and is now subrogated to the owners' rights against Crosby. Following a bench trial, the district court entered judgment in Crosby's favor. For the following reasons, we affirm the district court's judgment.

## I

Hull 180 was part of fleet of 240-foot offshore supply vessels that were equipped with a retractable bow thruster, a mechanically deployed propulsion and steering device that increases the vessel's maneuverability and allows her to hold station in rough seas. When retracted, the thruster's propeller and shroud are flush with the keel of the vessel. When deployed, the thruster protrudes approximately nine to ten feet below the keel. At the time of the incident, retractable bow thrusters were a new technology and not found on the typical offshore supply boat. Unbeknownst to either Hull 180's owners or to Crosby, the retractable bow thruster on Hull 180 was deployed during the tow.

Late on September 18, 1998, two of Crosby's tugs began towing Hull 180 through Cat Island Pass, a channel of water running at least twenty feet deep. The draft marks of Hull 180 indicated that she was drawing between fourteen to fifteen feet of water. In truth, the deployed bow thruster was causing her to draw some twenty-three feet of water. Around midnight, the tow was not making any headway and had apparently run aground. Because neither of the tug captains was aware of the retractable thruster and because there should have been at least five feet of water under Hull 180's keel, the apparent grounding was somewhat of a mystery.

Without contacting the owners, Crosby attempted to free Hull 180 and continue the tow.[2]

---

[2] Tropical Storm Frances was approaching, and the owner of Hull 180 asked Crosby to commence the tow with all dispatch.

The two tugs attempted to pull Hull 180 north without success. They then turned the bow of the vessel 180 degrees and unsuccessfully attempted to pull it south. At approximately four o'clock in the morning, one of Crosby's tug captains noticed that Hull 180 was taking on water. At that point, Crosby contacted the owner, who instructed Crosby to quit towing.

During the salvage operation, the owner discovered that the retractable thruster had been deployed. It was also determined that Crosby's attempts to pull Hull 180 free had damaged the thruster's seal and torn it from its upper supports. This created an opening through which Hull 180 took on water.

## II

A tug is neither a bailee nor an insurer of its tow; it is merely obliged to exercise "such reasonable care and maritime skill as prudent navigators employ for the performance of similar service." Stevens v. The White City, 285 U.S. 195, 202 (1932); King Fisher Marine Serv., Inc. v. The NP Sunbonnet, 724 F.2d 1181, 1184 (5th Cir. 1984). A tug is not responsible for the unseaworthiness of its tow unless it had actual knowledge of the tow's unseaworthiness or the unseaworthiness was so apparent that it would be negligent to proceed with the tow. See King Fisher, 724 F.2d at 1184. The parties agree that Hull 180 was unseaworthy for the tow with its thruster deployed and protruding nine to ten feet below the vessel's keel. Crosby had no knowledge of Hull 180's seaworthiness. Thus, the district court found that Crosby was entitled to assume that Hull 180 was tendered in a seaworthy condition and that its draft marks were accurately depicting the draft of the vessel. The district court further found that Crosby acted reasonably under the circumstances and demonstrated prudent maritime skill in their efforts to free Hull 180. Zurich appeals this factual finding.

In admiralty, the existence of negligence is a finding of fact that we review only for clear error. See Houston Exploration Co. v. Halliburton Energy Servs., 269 F.3d 528, 531 (5th Cir. 2001). A finding of fact is clearly erroneous only when the appellate court, after reviewing the entire record, is left with the "definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); Houston Exploration, 269 F.3d at 531. As the Supreme Court explained:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

Anderson v. City of Bessemer City, 470 U.S. 564, 573–74 (1985).

Zurich argues that Crosby acted unreasonably when it failed to contact the owners of Hull 180 before attempting to free the vessel. According to Zurich, Crosby should have contacted the owner because there was no apparent reason for the grounding. Zurich maintains that, had Crosby contacted the owners, Crosby would have been instructed to wait for the owners' personnel. Thus, Crosby would not have attempted to free Hull 180, and Hull 180 would not have taken on water. The district court rejected this argument as too speculative and based on hindsight.

Whether or not we find Zurich's argument to be reasonable, Zurich has not demonstrated that the district court clearly erred in its finding of fact. At most, Zurich has simply proffered another permissible view of the evidence, and this is insufficient to prove a clear error by the factfinder. Thus, the district court did not err when it found that Crosby acted reasonably under

-4-

the circumstances.

Zurich also challenges the district court's finding that it was the nonapparent unseaworthiness of Hull 180 that caused the damage. To establish maritime negligence, a plaintiff must prove: (1) that the defendant owed plaintiff a particular duty of care; (2) that the defendant breached that duty; (3) that the plaintiff sustained an injury; and (4) that there is a causal connection between the defendant's breach of duty and the plaintiff's injury. See Carnal Barge Co. v. Torco Oil Co., 220 F.3d 370, 376 (5th Cir. 2000). Because we found no clear error in the district court's conclusion that Crosby did not breach the duty of reasonable care owed to the owners of Hull 180, there is no need to review its finding with respect to causation.

**III**

Accordingly, the district court's judgment is AFFIRMED.